**Brad T. Summers, OSB No. 911116**
tsummers@balljanik.com
**David W. Criswell, OSB No. 925930**
dcriswell@balljanik.com
BALL JANIK LLP
101 SW Main Street, Suite 1100
Portland, OR  97204
Telephone:  (503) 228-2525
Facsimile:  (503) 295-1058

Attorneys for Kenneth S. Eiler, Chapter 11 Trustee

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 16-30233-rld11 |
| **THE MICHAEL KING SMITH FOUNDATION,** | **NOTICE OF FILING OF ASSET PURCHASE AGREEMENT BETWEEN TRUSTEE AND THE FALLS EVENT CENTER LLC** |
| Debtor. | |

Attached hereto as Exhibit A is a copy of the executed Asset Purchase Agreement

between the Trustee and The Falls Event Center LLC.

DATED:  June 22, 2016

                    BALL JANIK LLP


                    By: /s/ Brad T. Summers
                       Brad T. Summers
                       tsummers@balljanik.com

                       Attorneys for Kenneth S. Eiler,
                       Chapter 11 Trustee

**Page 1 -  NOTICE OF FILING OF ASSET PURCHASE AGREEMENT BETWEEN TRUSTEE AND THE FALLS EVENT CENTER LLC**

1067452\v1
BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon  97204-3219
Telephone 503-228-2525

Case 16-30233-rld11    Doc 97    Filed 06/22/16

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "Agreement") is made and entered into as of _____, 2016 (the "Effective Date") by and between The Falls Event Center LLC, a Utah limited liability company, or its affiliated assignee ("Buyer") and Kenneth S. Eiler, Chapter 11 Trustee of The Michael King Smith Foundation in United States Bankruptcy Court for the District of Oregon Case No. 16-30233-rld11 ("Seller").

## RECITALS:

A.     The Michael King Smith Foundation ("MSKF") filed a voluntary Chapter 11 bankruptcy petition on January 26, 2016, Bankruptcy Case No. 16-30233-rld11 (the "Bankruptcy Case") before the United States Bankruptcy Court for the District of Oregon (the "Court"). Seller was appointed by the Court on May 12, 2016 and in that capacity Seller is selling the fee simple interest in certain land located in Yamhill County, Oregon, and described on the attached Exhibit A-1 and depicted on the attached Exhibit A-2, including any and all buildings, structures and improvements, and any personal property, vehicles, planes, furniture, fixtures, equipment and supplies (including all right, title and interest, if any, to any water permits and all water park equipment, farm equipment, pumps and irrigation systems or any property otherwise left on the real property at the closing to the extent owned by Seller), agricultural crops planted or growing on the real property, and electrical, plumbing, fire sprinkler, lighting, heating, ventilating and air conditioning systems, if any, and other similar systems at such real property (other than the property and fixtures that are owned by tenants or other third parties) and all rights and benefits appurtenant to, or associated with, such real property (including, but not limited to, all entitlements, permits, approvals, easements, water and mineral rights, development rights, plans, maps, warranties, guaranties, licenses, governmental approvals and certificates which benefit the Property, to the extent assignable) existing as of the Closing Date (as defined in Section 5.1) (collectively, the "Property").

B.     Subject to Court Approval (as defined in Section 4.1.2), Seller desires to sell the Property to Buyer, and Buyer desires to purchase the Property from Seller, for the price and on the other terms and conditions set forth in this Agreement.

C.     Buyer was established and is controlled by two native Oregonians. It is Buyer's intent to work cooperatively with the Evergreen Aviation and Space Museum and the Captain Michael King Smith Educational Institute (the "Museum") for the long-term benefit of the Museum and the communities of the City of McMinnville, Yamhill County and the State of Oregon. If not entered into by the Closing Date (defined in Section 5.1 below), Buyer shall enter into a lease with the Museum for the space museum building for at least a five (5) year term, as required by the global settlement approved by the Court in the bankruptcy case of Evergreen Vintage Aircraft, Inc., Bankruptcy Case No. 14-36770-rld11. Buyer and the Museum have agreed that the Buyer will assume operation of the water park upon expiration of the current lease term on December 31, 2016. Buyer and the Museum are currently negotiating an agreement that will provide for the use of the aviation museum building, theater building, space museum building, water park and chapel included in the Property by Buyer and the Museum in a manner that will benefit each of them and will maximize the use of the improvements. In addition, Buyer will commit to make substantial ongoing donations to the Museum over the 30 years after closing. Buyer and the Museum entered into a Letter of Intent dated June 2, 2016, as amended

Exhibit A
Page 1 of 41

(the "Museum LOI"), to document their mutual intentions and will finalize the agreements contemplated in the Museum LOI prior to closing.

D.      Upon closing on the Property and completing a lot line adjustment to have the various boundaries of the parcels to match the current urban growth boundary of the City of McMinnville, Buyer intends to sell the hotel parcel to an experienced hotel developer to proceed with development and completion of the planned hotel on the Property for which grading and excavation work have been performed.  Buyer has experience with developing and operating event centers and anticipates that the close proximity of the hotel, the water park and the Museum will benefit all three facilities and the economies of the City of McMinnville, Yamhill County and the State of Oregon. Completing the development of the hotel will also help fulfill the vision of Delford Smith in establishing the Museum and the Foundation.

AGREEMENTS:

In consideration of the foregoing, which are hereby agreed to and incorporated herein by this reference, the mutual covenants of the parties set forth in this Agreement, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1.      Purchase and Sale.  Subject to Court Approval, Seller agrees to sell the Property to Buyer, and Buyer agrees to purchase the Property from Seller, for the price and on the terms and conditions set forth in this Agreement.  Buyer acknowledges that the Property does not include: (i) any avoidance actions under Chapter 5 of the Bankruptcy Code; (ii) MKSF's books and records; (iii) any rental payments during the current calendar year from the lease of MKSF's agricultural land; (iv) cash on hand and deposits; and (v) any other assets not specifically included in the list of assets to be acquired.

2.      Purchase Price; Earnest Money.

2.1      Purchase Price.  The purchase price for the Property ("Purchase Price") shall be the sum of Ten Million Nine Hundred Thousand and 00/100 Dollars ($10,900,000.00) plus any interest accrued on the debt owed to the Secured Creditors of MKSF between July 16, 2016 and the Closing Date (defined in Section 5.1 below).

2.2      Payment.  Buyer shall pay the Purchase Price to Seller in immediately available funds at the Closing (as defined in Section 5.1).

2.3      Earnest Money.

2.3.1      Upon execution of this Agreement, Buyer shall open an escrow with Ticor Title Company (the "Escrow Agent") at 111 SW Columbia Street, Suite 1000, Portland, Oregon 97201, Attn: Alli Swallow and shall deposit One Hundred Thousand and 00/100 Dollars ($100,000.00) ("Earnest Money").  References to "escrow" shall mean the escrow opened by Buyer with respect to the closing of the acquisition of the Property pursuant to this Agreement ("Escrow").  Documents and funds relating to the Property transaction shall be deposited in and be disbursed and delivered from the Escrow.

2.3.2      Unless Buyer gives written notice to Seller of Buyer's approval of all aspects of the Property or Buyer's waiver of the due diligence conditions on or before the Due Diligence

**Exhibit A**
**Page 2 of 41**

Deadline (as defined in Section 4.1.1), this Agreement shall terminate and the Earnest Money shall be promptly returned to Buyer. (If Buyer fails to give such written notice to Seller on or before the Due Diligence Deadline, Buyer shall be deemed to have terminated this Agreement and the Earnest Money shall be promptly returned to Buyer.) If Buyer gives Seller written notice to Seller of Buyer's approval of all aspects of the Property or waiver of the due diligence conditions on or before the Due Diligence Deadline, the Earnest Money shall be nonrefundable except as otherwise provided in this Agreement. In the event Buyer fails to consummate its purchase of the Property in breach with this Agreement notwithstanding the satisfaction or waiver of all conditions to Buyer's obligation to do so, the Earnest Money shall be retained by Seller as liquidated damages and shall constitute Seller's sole remedy against Buyer on account of such failure to consummate this transaction. Seller and Buyer acknowledge and agree that the damages that would be incurred by Seller on account of such a failure to close by Buyer would be difficult to ascertain with reasonable certainty and that the amount of the Earnest Money constitutes a reasonable approximation of such damages and not a penalty. Without limiting the foregoing, under no circumstances shall Buyer be liable Seller or the Seller's successors or assigns, for any indirect, consequential, incidental, punitive or exemplary damages of any kind arising out of or related to this Agreement. The Earnest Money shall be applicable to and credited against the Purchase Price at the Closing.

2.4    Allocation of Purchase Price. Seller and Buyer agree to work together in good faith to agree on a reasonable allocation of the Purchase Price among the personal property, intangible property and the various parcels comprising the real property included in the Property, which allocation shall be prepared in a manner consistent with Section 1060 of the Internal Revenue Code and the treasury regulations thereunder. Neither Seller nor Buyer shall take a position in any tax return, examination, or administrative or judicial proceeding relating to any tax return that is inconsistent with this Section 2.4, or with any allocation mutually agreed by the parties in writing.

3.    Pre-Closing Matters.

3.1    Access to Property. From time to time prior to the Closing or the earlier termination of this Agreement, Buyer and its representatives shall have the right, after reasonable notice to Seller and at reasonable times, to enter upon the Property for the purpose of conducting any investigation or test reasonably related to Buyer's purchase or prospective use of the Property; *provided* that all such activities shall be conducted at no unreimbursed out-of-pocket expense to Seller apart from the time required for Seller's personnel to make the Property available to Buyer and its representatives. Buyer shall (i) indemnify, defend, and hold harmless Seller from and against any claim, loss, liability, or expense (including reasonable attorneys' fees) to the extent arising from or related to Buyer's activities pursuant to this Section 3.1, provided, however, Buyer shall have no obligation to indemnify, defend or hold Seller harmless with respect to defects, environmental contamination or any other matters in, on or under the Property except to the extent such defect, contamination or other matters were caused or physically made worse by Buyer, and (ii) if Buyer does not acquire the Property pursuant to this Agreement, fully compensate Seller for any physical damage to, or any lien or encumbrance imposed on, the Property and attributable to Buyer's activities pursuant to this Section 3.1, provided, however, Buyer shall have no obligation to indemnify, defend or hold Seller harmless with respect to defects, environmental contamination or any other matters in, on or under the Property except to the extent such defect, contamination or other matters were caused or physically made worse by Buyer. Buyer shall have no right to conduct any invasive environmental testing or sampling without Seller's prior written approval, which shall not be unreasonably withheld, conditioned or delayed.

3.2     Access to Records.  From time to time prior to the Closing or the earlier termination of this Agreement, Buyer and its representatives shall have the right to inspect and copy all books, records, maps, leases, contracts, aerial photographs, deeds, agreements, permits, land use approvals, surveys, abstracts, and other materials related to the Property and within Seller's possession or control, including those on a file transfer protocol ("FTP") website created by Seller and made readily available to Buyer through the Closing, if any (collectively, the "Property Records"). Any such inspection of Property Records not on an FTP website shall take place during normal business hours at the location where such Property Records are stored, which shall be either at the office(s) of MKSF in the greater McMinnville, Oregon area, or at the Property.  Buyer shall give Seller reasonable prior notice of Buyer's desire to inspect the Property Records (except those available on an FTP website), and such inspection and copying shall be undertaken without any unreimbursed out-of-pocket expense to Seller apart from the time required for Seller's personnel to produce or make the records available to Buyer and its representatives and to replace the same after such inspection.  Seller and its agents shall have no responsibility or liability for the completeness or accuracy of the Property Records, or any other information given by Seller to Buyer regarding the condition or operation of the Property (collectively, the "Seller Information").  Seller is making no representation with respect to the Seller Information, except that the documents provided to or made available to Buyer are complete copies (or originals) of those documents in Seller's possession and control and Seller has no actual knowledge of any material inaccuracy in, or material omission from, such documents and Seller has not knowingly withheld any material information concerning the use, ownership, operation or maintenance of the Property within its possession or control.  Buyer assumes and accepts the entire responsibility for interpreting and assessing the Seller Information, and Buyer will rely solely on Buyer's own judgment in making Buyer's decision to purchase the Property.

3.3     Title Matters.  Within five (5) business days of the Effective Date, Seller shall cause to be delivered to Buyer a current preliminary title report for the Property from the Escrow Agent dated within thirty (30) days of the Effective Date (the "Title Report") along with copies of (or electronic links to) the documents described in the Title Report and an ALTA survey of the Property (collectively, the "Title Documents").  The "Permitted Exceptions" shall consist of all matters of public record as to the Property as of the Effective Date (except as otherwise agreed between Buyer and Seller in writing before Closing), approved by Buyer in Buyer's sole and absolute discretion prior to the Closing Date and shall not include monetary liens and encumbrances (all of which will be paid or removed by Seller at Closing, other than real property taxes and assessments, if any, not yet due for the current tax year as of Closing (which shall be prorated at and as of Closing as provided herein).  Buyer may, at its sole cost and expense, obtain a new or updated ALTA survey if it so desires.  Except as expressly approved in writing beforehand by Buyer, Seller shall not create or suffer any new exception or encumbrance against the Property or enter into any new, or extend or modify any existing, lease or contract relating to or binding upon the Property from and after the Effective Date.  If any customary and/or historic access, parking or any existing power, communications, drainage, sewer, water, or other utility or service (or water point of access, transportation or storage) feature or facility serving the Property is located on, under or over the parcel or parcels on which the aviation museum building and theater building are located at Closing of this Agreement (or if none currently exist and the Property does not directly abut and have access to public utility service and the public road right of way), it shall be a condition to Closing that all such appropriate, reasonable, perpetual easements and rights for the use, operation, access, repair, reciprocal parking rights, maintenance, inspection, alteration and improvement of the same over, on, under and across such other land(s) shall be obtained in their existing locations, or if none exist and the Property does not directly abut and have access to public utility service and the public road right of way, then in a reasonable location as are approved by Buyer in its sole discretion (the "Easements"), and such

easement(s) benefitting the Property shall be insured as part of the Property in the title policy issued to Buyer and such easements burdening the Property in favor of the other areas of the Property shall be Permitted Exceptions as to the Property. Seller agrees to cooperate with and assist Buyer with obtaining such estoppels and certifications as Buyer may reasonably request with respect to any and all leases and occupancy agreements affecting the Property.

4.      Conditions to Closing.

4.1      Buyer's Conditions. Buyer's obligation to close this transaction shall be subject to and contingent upon the satisfaction (or waiver by Buyer in its sole discretion) of each of the following conditions:

4.1.1      Due Diligence Approval. Buyer's obligation to purchase the Property shall be contingent upon Buyer's review and approval of all aspects of the Property in Buyer's sole and absolute discretion by no later than July 7, 2016 (the "Due Diligence Deadline"), including, without limitation, (i) vehicular and pedestrian access to the Property; (ii) the health of the Property's habitat; (iii) the economic development potential and feasibility of the Property; (iv) infrastructure or utilities needed or desired to serve the Property; (v) the master planning of the Property; (vi) improvements in, on or near any body of water abutting the Property; (vii) environmental conditions existing on the Property; (viii) flood plain and mapping issues; (ix) the form of Easements to be recorded prior to closing; (x) use agreements for Buyer's use of the Museum buildings including, without limitation, the aviation building and theater building and consent of the Museum's landlord for such use agreements; (xi) geotechnical and soils issues; (xii) zoning and code compliance matters; (xiii) transferability of building permits for the development of a hotel on the Property; (xiv) all other physical and economic conditions of, or associated with, the Property; (xv) Buyer shall have entered into all desired agreements with the Museum, including, without limitation, the lease for the space museum building and acquisition of certain personal property from the Museum as is set forth in the Museum LOI; and (xvi) Buyer, as Buyer deems necessary or desirable for the acquisition or development of the Property (as determined in Buyer's sole and absolute discretion), shall have entered into agreements with, or obtained approvals from, one or more governmental bodies or agencies.

4.1.2      Court Approval. The issuance of an Order in the Bankruptcy Case approving the terms and conditions of sale of the Property, free and clear of liens pursuant to the terms of this Agreement (the "Court Approval"), which Court Approval is final in all respects.

4.1.3      Performance of Obligations. Each of the obligations and covenants of Seller to be performed prior to or on the Closing Date pursuant to this Agreement shall have been performed in all material respects.

4.1.4      Title Policy. The Escrow Agent shall have unconditionally committed to issue the title insurance policy to Buyer with respect to the Property contemplated by Section 5.5.

4.1.5      No Material Adverse Change in Property. Between the Effective Date and the Closing Date, there shall not have occurred any material adverse change in the physical condition of the Property as of the Effective Date.

4.1.6      No Material Adverse Impact on Seller's Ability to Close. Between the Effective Date and the Closing Date, there shall not have been any change, effect, event, occurrence or state of facts that is, either individually or when aggregated, materially adverse to Seller's ability to

consummate the transactions described herein that has not been previously disclosed by Seller in writing to, and expressly accepted or waived in writing by, Buyer.

4.1.7    No Adverse Judicial or Governmental Action.  No action shall have been taken, and no statute, rule, regulation, executive order, judgment, decree, or injunction shall have been enacted, entered, promulgated or enforced (and not repealed, superseded, lifted or otherwise made inapplicable), by any court or governmental or regulatory agency of competent jurisdiction which restrains, enjoins or otherwise prohibits the closing or any of the other transactions contemplated hereby (each party agreeing to use its reasonable efforts to avoid the effect of any such statute, rule, regulation or order or to have any such order, judgment, decree or injunction lifted).

4.1.8    Accuracy of Representations.  Each of Seller's representations and warranties set forth in this Agreement shall be true and correct in all material respects as of the Closing Date.

4.1.9    Performance of Obligations.  Each of the obligations and covenants of Seller to be performed prior to or on the Closing Date pursuant to this Agreement shall have been performed in all material respects.

4.1.11    Title.  Buyer shall have approved in all respects the status of title to the Property, including any survey or other matters, and shall have received and approved estoppels and other certifications from Seller and any and all tenants and contract counterparties as provided herein.

If any of the conditions set forth in this Section 4.1 are not satisfied on or before the Closing Date (or such earlier deadline specified in this Section 4.1, as applicable), Buyer may terminate this Agreement by written notice delivered to Seller and Escrow Agent.  Upon receipt of such termination notice, the Earnest Money and all interest earned thereon shall be returned to Buyer in accordance with Section 2.3. Termination by Buyer or for any reason shall terminate this entire Agreement.  If any termination is for a Buyer default, the Earnest Money shall be subject to forfeiture as provided herein.

4.2    Seller's Conditions.  Seller's obligation to close this transaction shall be subject to and contingent upon the satisfaction (or waiver by Seller in its sole discretion) of each of the following conditions:

4.2.1    Court Approval.  The issuance of the Court Approval, which Court Approval is final in all respects.

4.2.2    No Adverse Judicial or Governmental Action.  No action shall have been taken, and no statute, rule, regulation, executive order, judgment, decree, or injunction shall have been enacted, entered, promulgated or enforced (and not repealed, superseded, lifted or otherwise made inapplicable), by any court or governmental or regulatory agency of competent jurisdiction which restrains, enjoins or otherwise prohibits the closing or any of the other transactions contemplated hereby (each party agreeing to use its reasonable efforts to avoid the effect of any such statute, rule, regulation or order or to have any such order, judgment, decree or injunction lifted).

4.2.3    Accuracy of Representations.  Each of Buyer's representations and warranties set forth in this Agreement shall be true and correct in all material respects as of the Closing Date.

4.2.4    Performance of Obligations.    Each of the obligations and covenants of Buyer to be performed prior to or on the Closing Date pursuant to this Agreement shall have been performed in all material respects.

If any of the conditions set forth in this Section 4.2 are not satisfied on or before the Closing Date (or such earlier deadline specified in this Section 4.2, as applicable), Seller may terminate this Agreement by written notice delivered to Buyer and the Escrow Agent.

5.    Closing.

5.1    Time and Place of Closing.    This transaction shall be closed in escrow (the "Closing") at the office of Ticor Title Company in McMinnville, Oregon, or at such other location as the parties may mutually agree.  The Closing shall take place on a date mutually acceptable to the parties but not later than the date that is thirty (30) days following the date of the Due Diligence Deadline or Court Approval, whichever is later.  The date on which the Closing occurs is referred to herein as the "Closing Date."

5.2    Events of Closing.  At the Closing, the following shall occur:

5.2.1    Buyer shall pay the Purchase Price (subject to credit for the Earnest Money and adjustments to reflect prorations and closing costs), to Seller by delivery of immediately available funds to Escrow Agent:

5.2.2    Seller shall execute, acknowledge, and deliver to Buyer a trustee's deed in the form attached hereto as Exhibit B (the "Deed"), conveying the real property included in the Property to Buyer subject only to the Permitted Exceptions and the Easements.

5.2.3    Seller shall execute and deliver to Buyer a general assignment in the form attached hereto as Exhibit C conveying to Buyer all of the intangible rights of Seller included in the Property, including, but not limited to, rights to any permits, approvals, entitlements and water rights, and Seller's interest in and to leases and any other contracts Buyer desires to assume at Closing.

5.2.4    Seller shall execute and deliver to Buyer a bill of sale in the form attached hereto as Exhibit D conveying to Buyer all personal property included in the Property on the Closing Date, including, without limitation, title to any vehicles, planes, and equipment free of any liens and encumbrances other than the Permitted Exceptions.  Seller shall transfer titles of any titled vehicles, planes and equipment included in the Property to Buyer.

5.2.5    Seller shall execute and deliver an affidavit of non-foreign status and any similar document required under Oregon Law and any standard owner's affidavit required by Escrow Agent to issue extended title coverage if desired by Buyer.

5.2.6    Intentionally omitted.

5.2.7    Seller and Buyer shall execute and deliver to any tenant or counterparty to a contact assigned to Buyer a notice of the closing of this transaction in form and content reasonably approved by the parties.

5.2.8    The parties shall take such other actions as may be reasonably

Case 16-30233-rld11    Doc 97    Filed 06/22/16

necessary to complete the Closing in accordance with this Agreement.

5.3     Prorations; Special Use Deferral.  Rents, any other income from the Property for matters approved by Buyer to survive Closing, property taxes and governmental assessments on the Property shall be prorated between Seller and Buyer as of the Closing Date.  Buyer shall assume liability for any deferred taxes for farm or forest deferral not currently due and with respect to which such special assessment and deferral is in full force and effect and the Property is fully qualified as of Closing, and shall indemnify, defend and hold harmless Seller from and against any deferred taxes assessed against the Property as a result of any change in its use or classification after the Closing Date.  Seller shall deliver or credit to Buyer at closing the amount of any refundable deposit, charge or prepayment at any time paid to or reimbursable by or owed by Seller under any lease or contract affecting the Property that may become due and payable or reimbursable to any third party from or after Closing.

5.4     Closing Costs.   The costs associated with the Closing shall be allocated as follows:

5.4.1     Seller shall pay (i) one-half of the escrow fee of Escrow Agent, (ii) the premium for the standard portion of the ALTA coverage title insurance policy contemplated by Section 5.5 in the amount of the Purchase Price allocated to the real property included in the Property, (iii) all recording fees with respect to the Deed, the Easements, and any encumbrances that are not Permitted Exceptions and must be removed at or prior to Closing, and (iv) all documentary transfer and other taxes in connection with the transfer of the Property from Seller to Buyer.

5.4.2     Buyer shall pay (i) one-half of the escrow fee of Escrow Agent in closing the sale of the Property to Buyer, (ii) the cost of the title insurance policy contemplated by Section 5.5 to be issued to Buyer in excess of the cost of standard owner's coverage, and any endorsements to the policy required by Buyer or its lender.

5.4.3     All other closing costs shall be apportioned between the parties as legally required, or in accordance with customary practices in Yamhill County, Oregon.

5.4.4     Except as expressly provided in this Agreement, each party shall bear all costs and expenses incurred by such party in connection with this transaction.

5.5     Title Insurance Policy.  Unless Buyer arranges for extended coverage, the Escrow Agent shall deliver to Buyer an ALTA standard coverage owner's policy of title insurance with respect to the Property, with a coverage amount equal to the Purchase Price allocated to the real estate included in the Property, subject only to the Permitted Exceptions applicable to the Property and the Easements, the standard exceptions to such policies (unless removed as part of extended coverage), and any liens or encumbrances suffered or created by Buyer.

5.6     Possession.  Seller shall deliver exclusive possession of the Property (subject to the rights of tenants under the applicable leases set forth on Exhibit A-3) to Buyer upon the Closing.

6.     Representations and Warranties.

6.1     Seller's Representations and Warranties.   Seller represents and warrants to Buyer as follows:

6.1.1    Subject to receiving Court Approval, Seller has full power and authority to execute, deliver, and perform its obligations under this Agreement and all instruments required to be delivered by Seller hereunder.

6.1.2    Neither Seller's execution and delivery of this Agreement, nor its performance of its obligations hereunder (subject to receiving Court Approval), will violate any court order, including, without limitation, in the Bankruptcy Case.

6.1.3    Seller does not have knowledge of any condemnation proceeding underway or anticipated with respect to the Property.

6.1.4    Intentionally omitted.

6.1.5    Seller is in compliance with the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Assets Control, Department of Treasury ("OFAC") and in any enabling legislation or other Executive Orders or regulations in respect thereof (the Order and such other rules, regulations, legislation or orders collectively called the "Orders"). Seller is not: (a) listed on the Specially Designated Nationals and Blocked Person List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to herein as the "Lists"); or (b) a Person (as defined in the Order) who has been determined by competent authority to be subject to the prohibitions contained in the Orders.

6.1.6    Except for the pending tax appeal for a portion of the Property instituted by the Evergreen Air Museum against the State of Oregon and the Bankruptcy Case, Seller has not received notice and has no knowledge of commencement of litigation or other proceedings, whether administrative, arbitration or otherwise, against the Property or received any written threats of such litigation or proceedings.

6.2    Buyer's Representations and Warranties.    Buyer represents and warrants to Seller as follows:

6.2.1    Buyer has full limited liability company power and authority to execute, deliver, and perform Buyer's obligations under this Agreement and all instruments required to be delivered hereunder. All requisite authorizing action has been taken by Buyer in connection with the execution and delivery of the Agreement and has been or will be taken by Buyer prior to Closing in connection with the consummation of the transaction.

6.2.2    Buyer acknowledges that this Agreement is subject to Court Approval and all of the terms and conditions of such Court Approval, including, without limitation, the terms of any overbid and closing requirements and procedures in connection with the sale of the Property, but subject in all events to Buyer's right to review and approve the Court Approval or terminate this Agreement as provided herein.   Neither Buyer's execution and delivery of this Agreement, nor its performance of its obligations hereunder (subject to receiving Court Approval), will violate any court order, including, without limitation, in the Bankruptcy Case.

6.2.3    Buyer is a disinterested party in the Bankruptcy Case (as such term is defined by the United States Bankruptcy Code), and except as otherwise disclosed to Seller in writing,

Buyer has no business, family or financial relationship with any parties with an interest in the bankruptcy case, including, without limitation, creditors, professionals and their affiliates.

6.2.4    Buyer is in compliance with the Order and other similar requirements contained in the rules and regulations of OFAC and in any Orders. Buyer is not: (a) listed on the Specially Designated Nationals and Blocked Person List maintained by OFAC pursuant to the Order and/or on any other Lists; or (b) a Person (as defined in the Order) who has been determined by competent authority to be subject to the prohibitions contained in the Orders.

6.3    Renewal of Representations and Warranties.  All representations and warranties contained in this Section 6 shall be deemed made as of the Effective Date and renewed as of the Closing Date and shall survive the Closing Date of a period of one (1) year.

6.4    No Other Representations and Warranties; Condition of Property; Ongoing Maintenance of Property.

6.4.1    Each party hereby acknowledges and agrees that no representations or warranties have been made with respect to the Property or this transaction other than those expressly set forth in this Section 6, elsewhere in this Agreement, or in the Deed or other instrument delivered pursuant to or in connection with this transaction.  Buyer acknowledges that, as of the Due Diligence Deadline, it will have investigated the Property to its satisfaction and agrees that, subject to the representations and warranties of Seller set forth in Section 6.1, elsewhere in this Agreement, and in the Deed, BUYER WILL BE TAKING THE PROPERTY IN ITS "AS IS" CONDITION WITH NO WARRANTY, EXPRESS OR IMPLIED, AND WITH ALL FAULTS, including latent defects, if any, and defects and conditions, if any, that cannot be observed by casual inspection.  Without limiting the generality of the foregoing provisions of this Section 6.4, Buyer acknowledges and agrees that, except as expressly set forth in Section 6.1, neither Seller nor anyone acting by, for or through Seller has made any representations or warranties including, but not limited to those with respect to, and except as otherwise provided in this Agreement or the Deed or other instrument delivered pursuant to or in connection with this transaction, Buyer hereby releases Seller from any loss, liability or claim including, but not limited  to those arising from, (i) the fitness of the Property for any particular purpose, (ii) the condition of the Property, or the existence or condition of any building, structures, or other improvements thereon, as of Closing (iii) any applicable building, zoning, or fire laws or regulations or compliance therewith or the existence or compliance with any required permits of any governmental authority, (iv) Buyer's ability to obtain any type of development or building permits at any time, (v) the availability or existence of any water, sewer, or other utilities or utility districts, (vi) the inadequacy or non-existence of any access rights to or from the Property, (vii) the presence in, on, or under the Property or any improvements thereon, or any adjacent property, of hazardous substances or contamination of any kind, to the extent existing as of Closing, and (viii) the acreage or square footage of the Property.  Buyer expressly waives any statutory right or cause of action based on any of the above matters, including, without limitation, any statutory obligation of disclosure with respect to such matters.  If any such facts are disclosed to Buyer after Buyer's Due Diligence Deadline has expired, Buyer may terminate this Agreement on notice to Seller if Buyer determines that the matter so disclosed is not acceptable to Buyer with the same effect as a termination as of right for failure of Buyer's due diligence conditions.

6.4.2    Buyer acknowledges that the provisions of this Section 6.4 were a negotiated part of this Agreement and serve as an essential component of the consideration for this Agreement.  Without limiting the generality of the foregoing, the parties specifically acknowledge that,

as of the Due Diligence Deadline, Buyer shall have had an opportunity to inspect the Property with regard to environmental concerns and the Purchase Price has been negotiated to eliminate all claims relating to environmental matters existing on the Property on the Closing Date. Consequently, this provision bars all claims brought by the Buyer against Seller concerning the condition of the Property existing at Closing pursuant to the Federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended, the Federal Resource Conservation and Recovery Act ("RCRA"), as amended, and any applicable, similar federal and/or state legislation. Notwithstanding the parties' intent that this provision bar all such claims against Seller, should a court of competent jurisdiction deem otherwise, the presence of this provision shall serve as the overwhelming, primary factor in any equitable apportionment of liability or damages between Seller and Buyer under CERCLA, RCRA, and other such legislation.

6.4.3    Buyer hereby waives, releases, acquits and forever discharges Seller of and from any and all claims, actions, causes of action, demands, rights, damages, costs, expenses, or compensation whatsoever, direct or indirect, known or unknown, foreseen or unforeseen, which Buyer now has or which may arise in the future on account of or in any way growing out of or in connection with any physical characteristics or existing condition of the Property as of the Closing Date, including, without limitation, subsurface conditions and solid and hazardous wastes, and hazardous substances, on, under, or related to the Property, and any laws rules or regulations applicable thereto.

6.4.4    Notwithstanding anything to the contrary set forth in this Agreement, from the Effective Date until the Closing Date or earlier termination of this Agreement, Seller shall maintain the Property in its current condition and keep the Property and the structures located thereon reasonably secure. Buyer shall have no responsibility for such maintenance nor shall Buyer bear any responsibility for costs associated with Seller's ongoing ownership and maintenance of the Property.

7.    Default; Remedies.

7.1    Time of Essence. Time is of the essence of the parties' obligations under this Agreement. However, if either party fails to perform an obligation required of such party by this Agreement, such party shall not be deemed to be in default under this Agreement, unless and until the other party provides a written notice of the failure to perform and provides the failing party with at least ten (10) business days after receipt of such notice to cure such failure.

7.2    Limitation of Buyer Pre-Closing Remedies and Damages. Buyer acknowledges that Seller is acting solely through the authority of the Court pursuant to the Bankruptcy Case, and Buyer therefore agrees that Buyer's sole and absolute remedy prior to Closing for any breach of this Agreement by Seller shall be to terminate this Agreement and obtain a refund of the Earnest Money deposited by Buyer or to seek an order from the Court compelling specific performance of this Agreement by Seller. Under no circumstance shall Seller be liable to Buyer or Buyer's heirs, successors or assigns, for any other direct, indirect, consequential, incidental, punitive or exemplary damages, or damages of any other kind arising out of or related to this Agreement or the condition of the Property at Closing, except as provided in this Agreement. The parties further acknowledge and agree that the parties would not be willing to enter into this Agreement without the parties' agreement to the limitations of remedies and damages in this Agreement.

8.    Miscellaneous Provisions.

8.1    Survival. All provisions of this Agreement that contemplate performance or

Case 16-30233-rld11    Doc 97    Filed 06/22/16

continuation after the Closing Date (including, without limitation, indemnity obligations) shall survive the Closing and be fully enforceable thereafter.

8.2     Binding Effect.   The provisions of this Agreement shall be binding upon and inure to the benefit of the parties and, subject to the restrictions on assignment set forth herein, their respective successors and assigns.

8.3     Assignment.  Buyer, without the prior written consent of Seller, may assign any of its rights or obligations under this Agreement to an affiliate of Buyer, provided that Buyer shall provide Seller with notice of such assignment prior to the effective date of such assignment.   No assignment of this Agreement shall release Buyer from its obligations under this Agreement unless Seller approves of the assignee based on the ability of such assignee to fulfill the financial and other obligations of Buyer under this Agreement, which approval shall not be unreasonably withheld, conditioned or delayed.  As used in this Section 8.3, "affiliate" shall mean any entity in which Buyer or an entity under the control of Buyer or its principals remains the primary point of contact for Seller.

8.4     Notices.  All notices under this Agreement shall be in writing. Notices may be (i) delivered personally, (ii) transmitted by facsimile, (iii) delivered by a recognized national overnight delivery service, or (iv) mailed by certified United States mail, postage prepaid and return receipt requested. Notices to any party shall be directed to the address set forth below, or to such other or additional address as any party may specify by notice to the other party. Any notice delivered in accordance with this paragraph shall be deemed given on the earlier of actual delivery or refusal of a party to accept delivery thereof; provided, however, that any notice transmitted by facsimile shall be deemed given on the date transmitted if delivered prior to 5:00 p.m. and if simultaneously transmitted by another means allowed under this Section 8.4. Copies of notices called for in this Agreement to persons other than the parties themselves are for courtesy purposes only and will not affect any notice to or from Purchaser or Seller or be required for such notices to be effective.

| | |
|---|---|
| If to Seller: | Kenneth S. Eiler PC |
| | PMB 810 |
| | 515 NW Saltzman Road |
| | Portland, OR 97229 |
| | Attn:  Kenneth S. Eiler |
| | Phone No.: (503) 292-6020 |
| | Fax No.: (503) 297-9402 |
| | kenneth.eiler7@gmail.com |
| | |
| With copy to: | Ball Janik, LLP |
| | 101 SW Main, Suite 1100 |
| | Portland, OR 97204 |
| | Attn: Brad T. Summers |
| | Phone: (503) 228-2525 |
| | Fax No.: (503) |
| | tsummers@balljanik.com |

{00519045;11}

| | |
|---|---|
| If to Buyer: | The Falls Event Center LLC |
| | Attn: John Neubauer |
| | 9067 South 1300 West, Suite 301 |
| | West Jordan, UT 84088 |
| | Phone: (801) 537-7700 |
| | Fax. No.: _____ |
| | jneubauer@thefallseventcenter.com |
| | |
| With copy to: | Radler White Parks & Alexander LLP |
| | Attn: Rebecca Biermann Tom |
| | 111 SW Columbia Street, Suite 1100 |
| | Portland, OR 97201 |
| | Phone: (971) 634-0210 |
| | Fax No.: (971) 634-0520 |
| | rtom@radlerwhite.com |
| | |
| If to Escrow Agent: | Ticor Title Company |
| | 111 SW Columbia Street, Suite 1000 |
| | Portland, Oregon 97201 |
| | Attn: Alli Swallow |
| | Phone: (503) 219-2179 |
| | Fax No.: (503) 242-0770 |
| | alli.swallow@ticortitle.com |

Notices may be given by counsel to a party on behalf of such party.

8.5     Waiver.   Any party's failure to exercise any right or remedy under this Agreement, delay in exercising any such right or remedy, or partial exercise of any such right or remedy, shall not constitute a waiver of that or any other right or remedy hereunder. A waiver of any breach of any provision of this Agreement shall not constitute a waiver of any succeeding breach of such provision or a waiver of such provision itself. No waiver of any provision of this Agreement shall be binding on a party unless it is set forth in writing and signed by such party.

8.6     Amendment.   This Agreement may not be modified or amended except by the written agreement of the parties.

8.7     Attorneys' Fees.   If a suit, action, or other proceeding of any nature whatsoever (including any proceeding under the U.S. Bankruptcy Code, and including matters peculiar to bankruptcy, or any arbitration, without implying any unilateral right to require arbitration) is instituted in connection with this Agreement or any instrument or agreement delivered by either party at Closing, or to interpret or enforce any rights or remedies hereunder or thereunder, the prevailing party shall be entitled to recover from the party not prevailing the prevailing party's attorneys' fees and all other fees, costs, and expenses actually incurred and reasonably necessary in connection therewith, as determined by the court at trial or on any appeal or review or arbitration or other proceeding, in addition to all other amounts provided by law.

8.8     Severability.   If any provision of this Agreement is held invalid, illegal, or unenforceable, then (i) such provision shall be enforceable to the fullest extent permitted by applicable

Exhibit A
Page 13 of 41

law, and (ii) the validity and enforceability of the other provisions of this Agreement shall not be affected and all such provisions shall remain in full force and effect.

8.9     Integration.  This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements with respect thereto. The parties acknowledge and agree that there are no agreements or representations relating to the subject matter of this Agreement, either written or oral, express or implied, that are not set forth in this Agreement.

8.10     Governing Law.   This Agreement (and all documents, instruments, and agreements executed and delivered pursuant to the terms and provisions of this Agreement (the "Ancillary Documents")) shall be governed by and construed and enforced in accordance with the United States Bankruptcy Code and, to the extent not inconsistent with the United States Bankruptcy Code, the internal laws of the State of Oregon, without regard to the principles of conflicts of law.

8.11     Jurisdiction.

8.11.1  Prior to the closing of the Bankruptcy Case, except as otherwise expressly provided in this Agreement, the parties agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement shall be brought exclusively in the Bankruptcy Court, and each of the parties hereby irrevocably (a) consents to the jurisdiction of the Bankruptcy Court (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding, and (b) waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in the Bankruptcy Court or that any such suit, action or proceeding which is brought in the Bankruptcy Court has been brought in an inconvenient forum.

8.11.2  Upon the closing of the Bankruptcy Case, except as otherwise expressly provided in this Agreement, the parties agree that any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement may be brought in any state or federal court in the State of Oregon having subject matter jurisdiction over such suit, action or proceeding, and that any cause of action arising out of this Agreement shall be deemed to have arisen from a transaction of business in the State of Oregon, and each of the parties hereby irrevocably (a) consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action or proceeding, and (b) waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding which is brought in any such court has been brought in an inconvenient forum.

8.12     Construction and Interpretation.  The headings or titles of the sections of this Agreement are intended for ease of reference only and shall have no effect whatsoever on the construction or interpretation of any provision of this Agreement; references herein to sections are to sections of this Agreement unless otherwise specified.  Meanings of defined terms used in this Agreement are equally applicable to singular and plural forms of the defined terms. As used herein, (i) the term "party" refers to a party to this Agreement, unless otherwise specified, (ii) the terms "hereof," "herein," "hereunder," and similar terms refer to this Agreement as a whole and not to any particular provision of this Agreement, (iii) the term "this transaction" refers to the transaction(s) contemplated by this Agreement, and (iv) the term "including" is not limiting and means "including without limitation."  In

**Exhibit A**
**Page 14 of 41**

the event any period of time specified in this Agreement ends on a day other than a business day, such period shall be extended to the next following business day. As used in this Agreement "business days" means all weekdays that are not State of Oregon holidays; provided that for the purposes of determining the Closing Date or other date on which the services of the Title Company, Escrow Agent, county or other governmental services and/or wire transfer services are required, such shall mean a Business Day on which the Title Company, Escrow Agent and county recording offices and applicable wire transfer service(s) are open for business as usual with the general public. All provisions of this Agreement have been negotiated at arm's length and this Agreement shall not be construed for or against any party by reason of the authorship or alleged authorship of any provision hereof.

   8.13 Execution. This Agreement may be executed in any number of counterparts, all of which together shall constitute one and the same agreement. Each party may rely upon the signature of each other party on this Agreement that is transmitted by facsimile or e-mail as constituting a duly authorized, irrevocable, actual, current delivery of this Agreement with the original ink signature of the transmitting party.

   8.14 Incorporation of Recitals, Exhibits, and Schedules. The Recitals to this Agreement and any Exhibits or Schedules attached to this Agreement are incorporated herein by this reference.

   8.15 Further Assurances. Each party agrees to execute and deliver such additional documents and instruments as may reasonably be required to effect this transaction fully, so long as the terms thereof are consistent with the terms of this Agreement.

   8.16 Commissions. Seller warrants and represents to Buyer that no broker or finder has been engaged by it in connection with the transaction contemplated by this Agreement. Buyer warrants and represents to Seller that no broker or finder has been engaged by it in connection with the transaction contemplated by this Agreement. If a broker makes a claim for a real estate commission in connection with the transaction: (i) Buyer, if such claim is based upon any agreement alleged to have been made by Buyer, shall indemnify and defend Seller against and hold Seller harmless (using counsel reasonably satisfactory to Seller) from any and all damages, liabilities, costs, expenses and losses (including, without limitation, attorneys' fees and costs) that Seller sustains or incurs by reason of such claim; and (ii) Seller, if such claim is based upon any agreement alleged to have been made by Seller, shall indemnify and defend Buyer against and hold Buyer harmless (using counsel reasonably satisfactory to Buyer) from any and all damages, liabilities, costs, expenses and losses (including, without limitation, attorneys' fees and costs) that Buyer sustains or incurs by reason of such claim.

   8.17 Oregon Statutory Disclaimer. THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS THAT, IN FARM OR FOREST ZONES, MAY NOT AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND THAT LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, AND SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING

TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

9.      Agreement Subject to Terms of Court Approval.  Notwithstanding any other provision of this Agreement to the contrary, this Agreement is expressly made subject in all respects to the terms of sale set forth in the Court Approval (which are incorporated herein by reference, the form and content of which shall be acceptable to Buyer and Seller), including, without limitation, the terms of the closing procedures set forth in the Court Approval and as generally described below.  Notwithstanding anything to the contrary herein or in a Court Approval, if any term or condition set forth in the Court Approval is not acceptable to Buyer, as determined by Buyer in its sole and absolute discretion, then Buyer may terminate this Agreement in accordance with Sections 2.3 and 4.1 above.

9.1      Seller will require the submission of any competing bid by July 1, 2016, accompanied by a deposit in the amount of One Hundred Thousand Dollars ($100,000.00) in the form of a wire transfer or cashier's check and a copy of the bid marked to show all differences between the provisions in such bid and the provisions of this Agreement.  To qualify, a competing bid must provide for a purchase price exceeding the Buyer's purchase price by at least One Hundred Thousand and 00/100 Dollars ($100,000.00).  A competing bid must be on the same or better terms than those reflected in this Agreement.

9.2      If no qualified competing bids are received by the bid deadline, the Buyer will be deemed the successful purchaser and Seller will immediately pursue entry of a Court order authorizing the sale of the Property to the Buyer.  If one or more qualified competing bids ("Qualified Competing Bids") are received by the bid deadline, Seller will conduct an auction on a date to be scheduled by the Seller.

*(Remainder of Page Intentionally Left Blank;*
*Signatures on Following Pages.)*

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date first set forth above.

Seller:

By: _____

Kenneth S. Eiler, Chapter 11 Trustee of THE MICHAEL KING SMITH FOUNDATION in United States Bankruptcy Court for the District of Oregon Case No. 16-30233-rld11

Buyer:

THE FALLS EVENT CENTER LLC, a Utah limited liability company

By:_____

Its:_____

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date first set forth above.

Seller:        By: _____

Kenneth S. Eiler, Chapter 11 Trustee of THE MICHAEL KING SMITH FOUNDATION in United States Bankruptcy Court for the District of Oregon Case No. 16-30233-rld11

Buyer:        THE FALLS EVENT CENTER LLC, a Utah limited liability company

By: _____

Its: _____ Founder and C.E.O. _____

Exhibit A
Page 18 of 41

## EXHIBIT A-1

### Legal Description of Property

#### Parcel 1:

A tract of land located in the Reuben Harris Donation Land Claim No. 80, and being in Section 23, Township 4 South, Range 4 West, Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

Commencing at a point on the South line of said Harris Donation Land claim, said point being a brass disk located at the Northwest corner of the J. White Donation Land Claim No. 81; thence, along the South line of said Harris Donation Land Claim, North 89°57'08" East a distance of 141.08 feet to the Southeast corner of the 344/1000 of a chain (22.70 feet) wide parcel of land described in Parcel 2 of that property conveyed to Evergreen Agricultural Enterprises, Inc., by deed recorded May 15, 2003, as Instrument No. 2003-11230, Deed Records of Yamhill County, Oregon; thence, along the Easterly line of said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 30.00 feet to its intersection with the Northerly right of way line of Three Mile Lane; thence, continuing along the Easterly line of said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 752.64 feet to the point of beginning; thence; continuing along said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 173.86 feet to a 5/8 inch iron rod located at the Northeast corner thereof, said point being also on the Southerly line of the 23.00 foot wide parcel of land described in Parcel 2 of said Instrument No. 2003-11230; thence, along the Southerly line of said 23.00 foot wide parcel, North 89°55'14" East a distance of 0.15 feet to the most Southerly Southeast corner thereof; thence, along the Easterly boundary of said 23.00 foot wide parcel, North 00°28'14" East a distance of 23.00 feet to a 5/8 inch iron rod; thence South 89°55'14" West a distance of 449.37 feet; thence South 00°21'50" West a distance of 197.77 feet to a point; thence North 89°48'13" East a distance of 448.86 feet to the point of beginning.

Bearings are based on a record of survey recorded July 11, 2011, in the Yamhill County Survey Records as Survey No. 12,766.

#### Parcel 2:

A tract of land located in the Reuben Harris Donation Land Claim No. 80 and being in Sections 23 and 24, Township 4 South, Range 4 West, Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

That property described in deed to Delford M. Smith, Trustee of the Michael King Smith Foundation UTA Dated November 15, 2006, and recorded November 14, 2013, as Instrument No. 2013-17385, Deed Records of Yamhill County, Oregon, more particularly described as follows:

Beginning at an iron pipe on the division line between the North and South Halves of said Donation Land Claim 20.441 chains North 88°47' West of an iron pipe at the Southeast corner of the North half of said Donation Land Claim; running thence North 27.918 chains to an iron pipe set on the South margin of a 40 foot road now there; thence North 89°49' West along the South line of said roadway 30.797 chains to an iron pipe; thence South 14.534 chains to an iron pipe; thence North 89°49' West 9.195 chains to an iron pipe; thence South 12.66 chains to an iron pipe; thence South 88°47' East 39.975 chains to the place of beginning.

TOGETHER WITH the following described tract of land:

Commencing at an iron pipe located at the Southeast corner of said property described in Instrument No. 2013-17385; thence, along the South line of said property described in Instrument No. 2013-17385, North 89°03'00" West a distance of 784.47 feet to the Northeast corner of that property conveyed to The Michael King Smith Foundation by deed recorded February 29, 2012, as Instrument No. 2012-02476, Deed Records of Yamhill County, Oregon, and the point of beginning; thence, along the Easterly line of said property described in Instrument No. 2012-02476, South 00°27'50" West a distance of 1447.92 feet to the most Easterly Southeast corner thereof, said point being on the North line of Parcel No. 5 of that property conveyed to H & R Burch Limited Partnership by deed recorded December 13, 1993, in Film Volume 299, Page 1369, Deed Records of Yamhill County, Oregon; thence, along the North line of said H & R Burch Limited Partnership Property, South 89°57'08" West a distance of 295.52 feet to the Northwest corner thereof; thence, along the West line of said H & R Burch Limited Partnership property, South 02°27'08" West a distance of 369.30 feet to a point on the Northerly right of way line of Three Mile Lane (30.00 feet Northerly of the South line of said Harris Donation Land Claim, when measured at right angles); thence, along said Northerly right of way line, South 89°57'08" West a distance of 1301.20 feet to a 5/8 inch iron rod located at the most Southerly Southeast corner of that property conveyed to Evergreen Vintage Aircraft, Inc., by deed recorded February 29, 2012, as Instrument No. 2012-02475, Deed Records of Yamhill County, Oregon; thence, along the most Southerly East line of said Evergreen Vintage Aircraft, Inc. property, North 00°20'28" East a distance of 609.97 feet to a point; thence, departing said most Southerly East line, North 90°00'00" East a distance of 1369.06 feet to a point; thence North 00°30'00" East a distance of 1212.36 feet to a point on the South line of said property described in Instrument No. 2013-17385; thence, along the South line of said property described in Instrument No. 2013-17385, South 89°03'00" East a distance of 228.12 feet to the point of beginning.

EXCEPTING THEREFROM any portion thereof appropriated by the State of Oregon, by and through its Department of Transportation, in Stipulated Final Judgment CV89-120, recorded February 26, 1991, in Film Volume 252, Page 725, Deed Records.

ALSO EXCEPTING THEREFROM that portion conveyed to the City of McMinnville, a Municipal Corporation, by Dedication of Easement and Right of Way recorded in Instrument No. 2003-04463, Deed Records.

Bearings are based on a record of survey recorded July 11, 2011, in the Yamhill County Survey Records as Survey No. 12, 766.

TOGETHER WITH an easement for a roadway thirty feet in width over and across the following described real

premises:

Being a part of the Reuben Harris Donation Land Claim, Notification No. 1232, Claim No. 80 in Township 4 South, Range 4 West of the Willamette Meridian in Yamhill County, Oregon, and beginning at an iron pipe at the Southeast corner of the David M. Jesse Donation Land Claim at an angle in County Road and angle in Harris Claim; thence North 89° 49' West along line between the Jesse and Harris Claims and the North side of present 40 foot roadway now there 33.96 chains to the Southeast corner of that certain tract conveyed to Clair L. Fisher and Alta L. Fisher by deed recorded in Book 114 at Page 580, Deed Records; thence Southerly .606 chains to the most Northerly Northwest corner of that certain tract conveyed to Viljo W. Pekkola, Eric E. Pekkola and Larry E. Pekkola recorded in Book 124 at Page 463, Deed Records; thence South 89° 49' East along the most Northerly North line of said Pekkola tract and the Easterly extension thereof 33.96 chains to a point in the County Road now there; thence North .606 chains to the point of beginning.

EXCEPTING THEREFROM the North ten (10) feet of even width.

Parcel 3:

A tract of land located in the Reuben Harris Donation Land Claim No. 80 and the V. Snelling Donation Land Claim No. 52 and being in Sections 22 and 23, Township 4 South, Range 4 West of the Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

Commencing at a point on the South line of said Harris Donation Land Claim, said point being a brass disk located at the Northwest corner of the J. White Donation Land Claim No. 81; thence along the South line of said Harris Donation Land Claim North 89°57'08" East a distance of 118.38 feet to the Southwest corner of the 344/1000 of a chain (22.70 feet) wide parcel of land described in Parcel 2 of that property conveyed to Evergreen Agricultural Enterprises, Inc., by Deed recorded May 15, 2003 as Document No. 2003-11230, Deed Records of Yamhill County, Oregon; thence along the Westerly line of said 344/100 of a chain wide parcel, North 00°28'14" East a distance of 30.00 feet to its intersection with the Northerly right of way line of Three Mile Lane and the point of beginning; thence, along said Northerly right of way line, North 89°57'08" East a distance of 926.63 feet to a 5/8 inch iron rod located at the most Southerly Southwest corner of that property conveyed to Evergreen Vintage Aircraft, Inc., by deed recorded February 29, 2012, as Instrument No. 2012-02475, Deed Records of Yamhill county, Oregon; thence, along the Westerly boundary of said Evergreen Vintage Aircraft, Inc. property, North 00°19'30" East a distance of 754.96 feet to a point; thence, departing said Westerly boundary, South 89°48'13" West a distance of 1350.90 feet to a point; thence North 00°21'50" East a distance of 1126.51 feet to a 5/8 inch iron rod located at a point on the division line between the North and South halves of said Harris Donation Land Claim; thence, along said division line, South 89°03'00" East a distance of 1264.57 feet to a point; thence, departing said division line, South 00°21'50" West a distance of 202.01 feet to a point; thence South 89°06'02" East a distance of 130.69 feet to a point; thence North 00°24'52" East a distance of 201.89 feet to a point on said division line; thence, along said division line, North 89°03'00" West a distance of 6.65 feet to a 5/8 inch iron rod located at the most Easterly corner of that property conveyed to Delford M. Smith, Trustee of the Michael King Smith Foundation UTA Dated November 15, 2006, by deed recorded November 14, 2013, as Instrument No. 2013-17383, Deed Records of Yamhill County, Oregon; thence, along the Northeast line of said property described in Instrument No. 2013-17383, North 50°51'00" West a distance of 1130.00 feet to a 5/8 inch iron rod; thence, continuing along said Northeast line, North 50°51'00" West a distance of 223 feet, more or less, to the center of the Yamhill River; thence, running upstream in a Westerly direction along the center of the Yamhill River, to its intersection with said division line between the North and South halves of said Harris Donation Land Claim and the most Westerly corner of said property described in Instrument No. 2013-17383, said point being also on the North line of that property described as Parcel 1 of "Tax Lot 1300 aka Parcel 2" in Deed to Evergreen Vintage Aircraft, Inc., recorded November 27, 2002, as Instrument No. 2002-23658, Deed Records of Yamhill County, Oregon; thence North 89°03'00" West, along the North line of said property described in Instrument No. 2002-23658, to the most Northerly Northwest corner thereof, said point being on the Northwest line of said Reuben Harris Donation Land Claim; thence South 51°59'54" West, along the Northwest line of said Reuben Harris Donation Land Claim, to the most Westerly Northwest corner of said property described in Instrument No. 2002-23658; thence, in a Southeasterly direction, following the courses of the Southwesterly boundary of said property described in Instrument No. 2002-23658, to a stone located at the Southwest corner thereof; thence, among the South line of said property described in Instrument No. 2002-23658, North 89 ° 55'14" East a distance of 260.40 feet, more or less, to the Northwest corner of that property conveyed to Delford M. Smith, Trustee of the Michael King Smith Foundation UTA Dated November 15, 2006 by deed recorded November 14, 2013, as Instrument No. 2013-17384, Deed Records of Yamhill County, Oregon; thence, along the Westerly boundary of said property described in Instrument No. 2013-17384, South 00°06'12" East a distance of 226.14 feet, more or less, to an angle point thereon; thence, continuing along said Westerly boundary, South 64°52'07" East a distance of 365.15 feet to an angle point thereon; thence, continuing along said Westerly boundary, South 00°06'12" East a distance of 63.19 feet to a point on the Northerly boundary of that property awarded to the State of Oregon, by and through its  Department of Transportation (ODOT), as set forth in Stipulated General Judgment, Case No. CV 020279 in the Circuit Court for the County of Yamhill, State of Oregon, entered June 14, 2004 and recorded June 24, 2004, as Instrument No. 2004-12481, Deed Records of Yamhill County, Oregon; thence, along the Northerly boundary of said ODOT property, South 84°00'53" East a distance of 7.33 feet, more or less, to an angle point

thereon; thence, continuing along the Northerly boundary of said ODOT property, North 84°32'55" East a distance of 111.98 feet to an angle point thereon; thence, continuing along the Northerly boundary of said ODOT property, South 87°30'08" East a distance of 254.87 feet to an angle point thereon; thence, continuing along the Northerly boundary of said ODOT property, South 50°55'50" East a distance of 471.43 feet to an angle point thereon; thence, continuing along the Northerly boundary of said ODOT property, South 62°21'11" East a distance of 137.16 feet to the Westerly line of said 344/100 of a chain wide parcel of land; thence, along the Westerly line of said 344/1000 of a chain parcel of land, South 00°28'14" West a distance of 118.39 feet, more or less, to the point of beginning.

EXCEPTING THEREFROM any portion thereof appropriated by the State of Oregon, by and through its Department of Transportation, in Stipulated Final Judgment CV89-120, recorded February 26, 1991, in Film Volume 252, Page 725, Deed Records.

ALSO EXCEPTING THEREFROM that portion conveyed to the City of McMinnville, a Municipal Corporation by Dedication of Easement and Right of Way recorded in Instrument No. 2003-04463, Deed Records.

ALSO EXCEPTING THEREFROM that portion conveyed to the City of McMinnville, a Municipal Corporation by Dedication of Easement and Right of Way recorded in Instrument No. 2003-04464, Deed Records.

Bearings are based on a record of survey recorded July 11, 2011, in the Yamhill County Survey records, as Survey No. 12,766.

## Parcel 4:

A tract of land located in the Reuben Harris Donation Land Claim No. 80, and being in Section 23, Township 4 South, Range 4 West, Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

Commencing at a point on the South line of said Harris Donation Land Claim,, said point being a brass disk located at the Northwest corner of the J. White Donation Land Claim No. 81; thence, along the South line of said Harris Donation Land Claim, North 89°57'08" East a distance of 1583.84 feet to its intersection with the Southerly extension of the most Southerly East line of that property conveyed to Evergreen Vintage Aircraft, Inc., by deed recorded February 29, 2012, as Instrument No. 2012-02475, Deed Records of Yamhill County, Oregon; thence, along the Southerly extension of said Evergreen Vintage Aircraft, Inc. property, North 00°20'28" East a distance of 30.00 feet to a 5/8 inch iron rod located at the most Southerly Southeast corner thereof; thence, along the most Southerly East line of said Evergreen Vintage Aircraft, Inc., property, North 00°20'28" East a distance of 609.97 feet to the point of beginning; thence, continuing along said most Southerly East line, North 00°20'28" East a distance of 299.76 feet to an angle point on the Easterly boundary of said Evergreen Aviation, Inc., property; thence, along said Easterly boundary, North 89°58'18" East a distance of 370.00 feet to an angle point thereon; thence, continuing along the Easterly boundary of said Evergreen Aviation, Inc. property, North 00°20'28" East a distance of 491.48 feet to a 5/8 inch iron rod located at the Northeast corner thereof; thence, along the North line of said Evergreen Aviation, Inc. property, South 89°50'51" West a distance of 1145.00 feet to a 5/8 inch iron rod located at the Northwest corner thereof; thence, along the most Westerly line of said Evergreen Aviation, Inc property, South 00°22'58" West a distance of 132.01 feet to a 5/8 inch iron rod located at the most Northerly Northeast corner of that property conveyed to The Michael King Smith Foundation by deed recorded July 23, 2012, as Instrument No. 2012-10261, Deed Records of Yamhill County, Oregon; thence, along the North line of said The Michael King Smith Foundation property, South 89°54'25" West a distance of 430.74 feet to a 5/8 inch iron rod located at the most Northerly Northwest corner thereof; thence, along the most Northerly West line of said The Michael King Smith Foundation property, South 00°05'35" East a distance of 317.02 feet to a 5/8 inch iron rod located at an angle point on the Westerly boundary thereof; thence, along the most Westerly North line of said The Michael King Smith Foundation Property, together with the Westerly extension thereof, South 89°55'14" West a distance of 686.36 feet to a point; thence North 00°21'50" East a distance of 928.73 feet to a 5/8 inch iron rod located at a point on the division line between the North and South halves of said Harris Donation Land Claim; thence, along said division line, South 89°03'00" East a distance of 1664.57 feet to a point; thence, departing said division line, South 00°21'50" West a distance of 202.01 feet to a point; thence South 89°06'02" East a distance of 130.69 feet to a point; thence North 00°24'52" East a distance of 201.89 feet to a point on said division line; thence, along said division line, South 89°03'00" East a distance of 1866.50 feet to a point; thence, departing said division line, South 00°30'00" West a distance of 1212.36 feet to a point; thence South 90°00'00" West a distance of 1369.06 feet to the point of beginning.

EXHIBIT A-2

Depiction of Property

## TAX LOT MAP



{00519045;11}

EXHIBIT A - 2

EXHIBIT A-3

Contracts

1.      Lease between THE MICHAEL KING SMITH FOUNDATION UTA dated November 15, 2006 and as thereafter amended, a trust governed by the laws of the State of Oregon ("MKSF") and EVERGREEN AVIATION AND SPACE MUSEUM AND THE CAPTAIN MICHAEL KING SMITH EDUCATIONAL INSTITUTE (the "Museum"), dated as of June 1, 2011, as amended by that certain First Amendment to Lease, effective as of August 23, 2012 and as amended by that certain Second Amendment to Lease, effective as of June 30, 2013, as amended by that certain letter agreement dated as of December 29, 2015, and as amended by that certain Amendment to Lease dated as of March __, 2016 (collectively, the "Lease"), with respect to the Premises identified therein.  [CONFIRM DATE AND TITLE OF LATEST AMENDMENT.]

2.      Lease dated June 1, 2008 between MKSF and the Museum regarding the Water Park, as amended.

3.      Lease dated June 1, 2008 between MKSF and the Museum regarding the Space Museum, as amended from time to time.

4.      The agreement between MKSF and Creekside Valley Farms for management of the agricultural land included in the purchased assets.

5.      Except as otherwise agreed between Buyer and the Museum with respect to the water park, MKSF's obligation to provide the Museum with certain no-cost, triple-net leases, as specifically set forth in the bankruptcy case filed by Evergreen Vintage Aircraft, Inc. in United States Bankruptcy Court for the District of Oregon Case No. 14-36770-rld11 and referenced in the Global Settlement Term Sheet filed as Docket No. 74 in said case except as otherwise agreed between Museum and Buyer.

EXHIBIT B

Form of Deed

Upon recording return to:
Ball Janik LLP
101 SW Main Street, Suite 1100
Portland, OR 97204
Attention: Brad T. Summers

TRUSTEE'S DEED
(Quitclaim Deed)

For Value Received, Kenneth S. Eiler, Chapter 11 Trustee of the Michael King Smith Foundation in United States Bankruptcy Court for the District of Oregon Case No. 16-30233-rld11 (the "Trustee"), does hereby convey, release, remise and forever quitclaim, without representation or warranty, unto The Falls Event Center LLC, a Utah limited liability company, whose current address is _____ _____, the property legally described on the attached Exhibit A (the "Property"), together with its appurtenances.

This conveyance is made pursuant to the powers conferred upon the Trustee by that certain Order Authorizing and Approving Asset Purchase Agreement, Authorizing Sale of Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests and Authorizing Assumption and Assignment of Executory Contracts and Unexpired Leases entered in the United States Bankruptcy Court for the District of Oregon, Case No. 16-30233-rld11, by the Honorable Randall L. Dunn, United States Bankruptcy Court Judge, on July ___, 2016.

The true and actual consideration for the Property is $ _____.

BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010. THIS INSTRUMENT DOES NOT ALLOW USE OF THE PROPERTY DESCRIBED IN THIS INSTRUMENT IN VIOLATION OF APPLICABLE LAND USE LAWS AND REGULATIONS. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THAT THE UNIT OF LAND BEING TRANSFERRED IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR PARCEL, TO DETERMINE ANY LIMITS ON LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS DEFINED IN ORS 30.930, AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING PROPERTY OWNERS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

Dated this _____ day of _____ 2016.

_____
Kenneth S. Eiler, Chapter 11 Trustee of the
Michael King Smith Foundation in United States
Bankruptcy Court for the District of Oregon Case
No. 16-30233-rld11

STATE OF                              )
                                      )
COUNTY OF                             )

     On this day of _____ in the year 2016, before me, a notary public in and for said State, personally appeared Kenneth S. Eiler, known or identified to me to be the person whose name is subscribed to the within instrument, as Chapter 11 Trustee of The Michael King Smith Foundation in United States Bankruptcy Court for the District of Oregon Case No. 16-30233-rld 11, and acknowledged to me that he executed the same as such.

Notary Public for _____
Residing at_____
(SEAL)                              My commission expires:_____

EXHIBIT A

PROPERTY LEGAL DESCRIPTION

Parcel 1:

A tract of land located in the Reuben Harris Donation Land Claim No. 80, and being in Section 23, Township 4 South, Range 4 West, Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

Commencing at a point on the South line of said Harris Donation Land claim, said point being a brass disk located at the Northwest corner of the J. White Donation Land Claim No. 81; thence, along the South line of said Harris Donation Land Claim, North 89°57'08" East a distance of 141.08 feet to the Southeast corner of the 344/1000 of a chain (22.70 feet) wide parcel of land described in Parcel 2 of that property conveyed to Evergreen Agricultural Enterprises, Inc., by deed recorded May 15, 2003, as Instrument No. 2003-11230, Deed Records of Yamhill County, Oregon; thence, along the Easterly line of said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 30.00 feet to its intersection with the Northerly right of way line of Three Mile Lane; thence, continuing along the Easterly line of said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 752.64 feet to the point of beginning; thence, continuing along said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 173.86 feet to a 5/8 inch iron rod located at the Northeast corner thereof, said point being also on the Southerly line of the 23.00 foot wide parcel of land described in Parcel 2 of said Instrument No. 2003-11230; thence, along the Southerly line of said 23.00 foot wide parcel, North 89°55'14" East a distance of 0.15 feet to the most Southerly Southeast corner thereof; thence, along the Easterly boundary of said 23.00 foot wide parcel, North 00°28'14" East a distance of 23.00 feet to a 5/8 inch iron rod; thence South 89°55'14" West a distance of 449.37 feet; thence South 00°21'50" West a distance of 197.77 feet to a point; thence North 89°48'13" East a distance of 448.86 feet to the point of beginning.

Bearings are based on a record of survey recorded July 11, 2011, in the Yamhill County Survey Records as Survey No. 12,766.

Parcel 2:

A tract of land located in the Reuben Harris Donation Land Claim No. 80 and being in Sections 23 and 24, Township 4 South, Range 4 West, Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

That property described in deed to Delford M. Smith, Trustee of the Michael King Smith Foundation UTA Dated November 15, 2006, and recorded November 14, 2013, as Instrument No. 2013-17385, Deed Records of Yamhill County, Oregon, more particularly described as follows:

Beginning at an iron pipe on the division line between the North and South Halves of said Donation Land Claim 20.441 chains North 88°47' West of an iron pipe at the Southeast corner of the North half of said Donation Land Claim; running thence North 27.918 chains to an iron pipe set on the South margin of a 40 foot road now there; thence North 89°49' West along the South line of said roadway 30.797 chains to an iron pipe; thence South 14.534 chains to an iron pipe; thence North 89°49' West 9.195 chains to an iron pipe; thence South 12.66 chains to an iron pipe; thence South 88°47' East 39.975 chains to the place of beginning.

TOGETHER WITH the following described tract of land:

Commencing at an iron pipe located at the Southeast corner of said property described in Instrument No. 2013-17385; thence, along the South line of said property described in Instrument No. 2013-17385, North 89°03'00" West a distance of 784.47 feet to the Northeast corner of that property conveyed to The Michael King Smith Foundation by deed recorded February 29, 2012, as Instrument No. 2012-02476, Deed Records of Yamhill County, Oregon, and the point of beginning; thence, along the Easterly line of said property described in Instrument No. 2012-02476, South 00°27'50" West a distance of 1447.92 feet to the most Easterly Southeast corner thereof, said point being on the North line of Parcel No. 5 of that property conveyed to H & R Burch Limited Partnership by deed recorded December 13, 1993, in Film Volume 299, Page 1369, Deed Records of Yamhill County, Oregon; thence, along the North line of said H & R Burch Limited Partnership Property, South 89°57'08" West a distance of 295.52 feet to the Northwest corner thereof; thence, along the West line of said H & R Burch Limited Partnership property, South 02°27'08" West a distance of 369.30 feet to a point on the Northerly right of way line of Three Mile Lane (30.00 feet Northerly of the South line of said Harris Donation Land Claim, when measured at right angles); thence, along said Northerly right of way line, South 89°57'08" West a distance of 1301.20 feet to a 5/8 inch iron rod located at the most Southerly Southeast corner of that property conveyed to Evergreen Vintage Aircraft, Inc., by deed recorded February 29, 2012, as Instrument No. 2012-02475, Deed Records of Yamhill County, Oregon; thence, along the most Southerly East line of said Evergreen Vintage Aircraft, Inc. property, North 00°20'28" East a distance of 609.97 feet to a point; thence, departing said most Southerly East line, North 90°00'00" East a distance of 1369.06 feet to a point; thence North 00°30'00" East a distance of 1212.36 feet to a point on the South line of said property described in Instrument No. 2013-17385; thence, along the South line of said property described in Instrument No. 2013-17385, South 89°03'00" East a distance of 228.12 feet to the point of beginning.

EXCEPTING THEREFROM any portion thereof appropriated by the State of Oregon, by and through its Department of Transportation, in Stipulated Final Judgment CV89-120, recorded February 26, 1991, in Film Volume 252, Page 725, Deed Records.

ALSO EXCEPTING THEREFROM that portion conveyed to the City of McMinnville, a Municipal Corporation, by Dedication of Easement and Right of Way recorded in Instrument No. 2003-04463, Deed Records.

Bearings are based on a record of survey recorded July 11, 2011, in the Yamhill County Survey Records as Survey No. 12, 766.

TOGETHER WITH an easement for a roadway thirty feet in width over and across the following described real

premises:

Being a part of the Reuben Harris Donation Land Claim, Notification No. 1232, Claim No. 80 in Township 4 South, Range 4 West of the Willamette Meridian in Yamhill County, Oregon, and beginning at an iron pipe at the Southeast corner of the David M. Jesse Donation Land Claim at an angle in County Road and angle in Harris Claim; thence North 89° 49' West along line between the Jesse and Harris Claims and the North side of present 40 foot roadway now there 33.96 chains to the Southeast corner of that certain tract conveyed to Clair L. Fisher and Alta L. Fisher by deed recorded in Book 114 at Page 580, Deed Records; thence Southerly .606 chains to the most Northerly Northwest corner of that certain tract conveyed to Viljo W. Pekkola, Eric E. Pekkola and Larry E. Pekkola recorded in Book 124 at Page 463, Deed Records; thence South 89° 49' East along the most Northerly North line of said Pekkola tract and the Easterly extension thereof 33.96 chains to a point in the County Road now there; thence North .606 chains to the point of beginning.

EXCEPTING THEREFROM the North ten (10) feet of even width.

Parcel 3:

A tract of land located in the Reuben Harris Donation Land Claim No. 80 and the V. Snelling Donation Land Claim No. 52 and being in Sections 22 and 23, Township 4 South, Range 4 West of the Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

Commencing at a point on the South line of said Harris Donation Land Claim, said point being a brass disk located at the Northwest corner of the J. White Donation Land Claim No. 81; thence along the South line of said Harris Donation Land Claim North 89°57'08" East a distance of 118.38 feet to the Southwest corner of the 344/1000 of a chain (22.70 feet) wide parcel of land described in Parcel 2 of that property conveyed to Evergreen Agricultural Enterprises, Inc., by Deed recorded May 15, 2003 as Document No. 2003-11230, Deed Records of Yamhill County, Oregon; thence along the Westerly line of said 344/100 of a chain wide parcel, North 00°28'14" East a distance of 30.00 feet to its intersection with the Northerly right of way line of Three Mile Lane and the point of beginning; thence, along said Northerly right of way line, North 89°57'08" East a distance of 926.63 feet to a 5/8 inch iron rod located at the most Southerly Southwest corner of that property conveyed to Evergreen Vintage Aircraft, Inc., by deed recorded February 29, 2012, as Instrument No. 2012-02475, Deed Records of Yamhill county, Oregon; thence, along the Westerly boundary of said Evergreen Vintage Aircraft, Inc. property, North 00°19'30" East a distance of 754.96 feet to a point; thence, departing said Westerly boundary, South 89°48'13" West a distance of 1350.90 feet to a point; thence North 00°21'50" East a distance of 1126.51 feet to a 5/8 inch iron rod located at a point on the division line between the North and South halves of said Harris Donation Land Claim; thence, along said division line, South 89°03'00" East a distance of 1264.57 feet to a point; thence, departing said division line, South 00°21'50" West a distance of 202.01 feet to a point; thence South 89°06'02" East a distance of 130.69 feet to a point; thence North 00°24'52" East a distance of 201.89 feet to a point on said division line; thence, along said division line, North 89°03'00" West a distance of 6.65 feet to a 5/8 inch iron rod located at the most Easterly corner of that property conveyed to Delford M. Smith, Trustee of the Michael King Smith Foundation UTA Dated November 15, 2006, by deed recorded November 14, 2013, as Instrument No. 2013-17383, Deed Records of Yamhill County, Oregon; thence, along the Northeast line of said property described in Instrument No. 2013-17383, North 50°51'00" West a distance of 1130.00 feet to a 5/8 inch iron rod; thence, continuing along said Northeast line, North 50°51'00" West a distance of 223 feet, more or less, to the center of the Yamhill River; thence, running upstream in a Westerly direction along the center of the Yamhill River, to its intersection with said division line between the North and South halves of said Harris Donation Land Claim and the most Westerly corner of said property described in Instrument No. 2013-17383, said point being also on the North line of that property described as Parcel 1 of "Tax Lot 1300 aka Parcel 2" in Deed to Evergreen Vintage Aircraft, Inc., recorded November 27, 2002, as Instrument No. 2002-23658, Deed Records of Yamhill County, Oregon; thence North 89°03'00" West, along the North line of said property described in Instrument No. 2002-23658, to the most Northerly Northwest corner thereof, said point being on the Northwest line of said Reuben Harris Donation Land Claim; thence South 51°59'54" West, along the Northwest line of said Reuben Harris Donation Land Claim, to the most Westerly Northwest corner of said property described in Instrument No. 2002-23658; thence, in a Southeasterly direction, following the courses of the Southwesterly boundary of said property described in Instrument No. 2002-23658, to a stone located at the Southwest corner thereof; thence, among the South line of said property described in Instrument No. 2002-23658, North 89 ° 55'14" East a distance of 260.40 feet, more or less, to the Northwest corner of that property conveyed to Delford M. Smith, Trustee of the Michael King Smith Foundation UTA Dated November 15, 2006 by deed recorded November 14, 2013, as Instrument No. 2013-17384, Deed Records of Yamhill County, Oregon; thence, along the Westerly boundary of said property described in Instrument No. 2013-17384, South 00°06'12" East a distance of 226.14 feet, more or less, to an angle point thereon; thence, continuing along said Westerly boundary, South 64°52'07" East a distance of 365.15 feet to an angle point thereon; thence, continuing along said Westerly boundary, South 00°06'12" East a distance of 63.19 feet to a point on the Northerly boundary of that property awarded to the State of Oregon, by and through its Department of Transportation (ODOT), as set forth in Stipulated General Judgment, Case No. CV 020279 in the Circuit Court for the County of Yamhill, State of Oregon, entered June 14, 2004 and recorded June 24, 2004, as Instrument No. 2004-12481, Deed Records of Yamhill County, Oregon; thence, along the Northerly boundary of said ODOT property, South 84°00'53" East a distance of 7.33 feet, more or less, to an angle point

thereon; thence, continuing along the Northerly boundary of said ODOT property, North 84°32'55" East a distance of 111.98 feet to an angle point thereon; thence, continuing along the Northerly boundary of said ODOT property, South 87°30'08" East a distance of 254.87 feet to an angle point thereon; thence, continuing along the Northerly boundary of said ODOT property, South 50°55'50" East a distance of 471.43 feet to an angle point thereon; thence, continuing along the Northerly boundary of said ODOT property, South 62°21'11" East a distance of 137.16 feet to the Westerly line of said 344/100 of a chain wide parcel of land; thence, along the Westerly line of said 344/1000 of a chain parcel of land, South 00°28'14" West a distance of 118.39 feet, more or less, to the point of beginning.

EXCEPTING THEREFROM any portion thereof appropriated by the State of Oregon, by and through its Department of Transportation, in Stipulated Final Judgment CV89-120, recorded February 26, 1991, in Film Volume 252, Page 725, Deed Records.

ALSO EXCEPTING THEREFROM that portion conveyed to the City of McMinnville, a Municipal Corporation by Dedication of Easement and Right of Way recorded in Instrument No. 2003-04463, Deed Records.

ALSO EXCEPTING THEREFROM that portion conveyed to the City of McMinnville, a Municipal Corporation by Dedication of Easement and Right of Way recorded in Instrument No. 2003-04464, Deed Records.

Bearings are based on a record of survey recorded July 11, 2011, in the Yamhill County Survey records, as Survey No. 12,766.

## Parcel 4:

A tract of land located in the Reuben Harris Donation Land Claim No. 80, and being in Section 23, Township 4 South, Range 4 West, Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

Commencing at a point on the South line of said Harris Donation Land Claim,, said point being a brass disk located at the Northwest corner of the J. White Donation Land Claim No. 81; thence, along the South line of said Harris Donation Land Claim, North 89°57'08" East a distance of 1583.84 feet to its intersection with the Southerly extension of the most Southerly East line of that property conveyed to Evergreen Vintage Aircraft, Inc., by deed recorded February 29, 2012, as Instrument No. 2012-02475, Deed Records of Yamhill County, Oregon; thence, along the Southerly extension of said Evergreen Vintage Aircraft, Inc. property, North 00°20'28" East a distance of 30.00 feet to a 5/8 inch iron rod located at the most Southerly Southeast corner thereof; thence, along the most Southerly East line of said Evergreen Vintage Aircraft, Inc., property, North 00°20'28" East a distance of 609.97 feet to the point of beginning; thence, continuing along said most Southerly East line, North 00°20'28" East a distance of 299.76 feet to an angle point on the Easterly boundary of said Evergreen Aviation, Inc., property; thence, along said Easterly boundary, North 89°58'18" East a distance of 370.00 feet to an angle point thereon; thence, continuing along the Easterly boundary of said Evergreen Aviation, Inc. property, North 00°20'28" East a distance of 491.48 feet to a 5/8 inch iron rod located at the Northeast corner thereof; thence, along the North line of said Evergreen Aviation, Inc. property, South 89°50'51" West a distance of 1145.00 feet to a 5/8 inch iron rod located at the Northwest corner thereof; thence, along the most Westerly line of said Evergreen Aviation, Inc property, South 00°22'58" West a distance of 132.01 feet to a 5/8 inch iron rod located at the most Northerly Northeast corner of that property conveyed to The Michael King Smith Foundation by deed recorded July 23, 2012, as Instrument No. 2012-10261, Deed Records of Yamhill County, Oregon; thence, along the North line of said The Michael King Smith Foundation property, South 89°54'25" West a distance of 430.74 feet to a 5/8 inch iron rod located at the most Northerly Northwest corner thereof; thence, along the most Northerly West line of said The Michael King Smith Foundation property, South 00°05'35" East a distance of 317.02 feet to a 5/8 inch iron rod located at an angle point on the Westerly boundary thereof; thence, along the most Westerly North line of said The Michael King Smith Foundation Property, together with the Westerly extension thereof, South 89°55'14" West a distance of 686.36 feet to a point; thence North 00°21'50" East a distance of 928.73 feet to a 5/8 inch iron rod located at a point on the division line between the North and South halves of said Harris Donation Land Claim; thence, along said division line, South 89°03'00" East a distance of 1664.57 feet to a point; thence, departing said division line, South 00°21'50" West a distance of 202.01 feet to a point; thence South 89°06'02" East a distance of 130.69 feet to a point; thence North 00°24'52" East a distance of 201.89 feet to a point on said division line; thence, along said division line, South 89°03'00" East a distance of 1866.50 feet to a point; thence, departing said division line, South 00°30'00" West a distance of 1212.36 feet to a point; thence South 90°00'00" West a distance of 1369.06 feet to the point of beginning.

EXHIBIT B

FORM OF ASSIGNMENT

ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS

THIS ASSIGNMENT AND ASSUMPTION OF LEASES AND CONTRACTS (the "Assignment"), is made by and between KENNETH S. EILER, CHAPTER 11 TRUSTEE OF THE MICHAEL KING SMITH FOUNDATION in United States Bankruptcy Court for the District of Oregon Case No. 16-30233-rld11-("Assignor"), and _____ ("Assignee").

W I T N E S S E T H:

WHEREAS, Assignor and Assignee entered into that certain Asset Purchase Agreement dated as of _____, 2016 ("Sale Agreement"), for the purchase and sale of certain real and personal property located in McMinnville, Oregon, as more particularly described therein (the "Property"); and

WHEREAS, the Sale Agreement provides that Assignor shall assign to Assignee and Assignee shall assume from Assignor the leases and contracts pertaining to the Property.

NOW, THEREFORE, in consideration of the promises and the mutual covenants herein contained, the parties hereto hereby agree as follows:

1.      Assignment of Leases and Contracts.  Assignor hereby assigns, sets over and transfers to Assignee all of its right, title and interest, if any, in, to and under such of the leases and contracts as are set forth on Exhibit A attached hereto and made a part hereof.

2.      Assumption.  Assignee hereby assumes all liabilities and obligations of Assignor under such of the leases and the contracts as are set forth on Exhibit A, to the extent accruing from and after the date hereof.

3.      Counterparts.  This Assignment may be executed in counterparts, each of which shall be an original and all of which counterparts taken together shall constitute one and the same agreement. Signatures transmitted by facsimile or email shall be legally binding.

4.      Capitalized Terms.  Any capitalized terms not otherwise defined herein shall have the same meaning in this Assignment as defined in the Sale Agreement.

5.      Miscellaneous.  This Assignment and the obligations of the parties hereunder shall survive the closing of the transaction referred to in the Sale Agreement, shall be binding upon and inure to the benefit of the parties hereto, their respective legal representatives, successors and assigns, shall be governed by and construed in accordance with the laws of the State of Oregon and may not be modified or amended in any manner other than by a written agreement signed by the party to be charged therewith.

Dated this _____ day of _____, 201__.

By:_____

Kenneth S. Eiler, Chapter 11 Trustee of THE MICHAEL
KING SMITH FOUNDATION in United States Bankruptcy
Court for the District of Oregon Case No. 16-30233-
rld11

EXHIBIT A TO ASSIGNMENT

Leases and Contracts

[TO BE INSERTED]

EXHIBIT C

Form of Bill of Sale

BILL OF SALE AND ASSIGNMENT

This Bill of Sale and Assignment (the "Bill of Sale") is made and entered into as of _____, 201__, by and between KENNETH S. EILER, CHAPTER 11 TRUSTEE OF THE MICHAEL KING SMITH FOUNDATION in United States Bankruptcy Court for the District of Oregon Case No. 16-30233-rld11 ("Assignor"), and _____ ("Assignee").

For good and valuable consideration paid by Assignee to Assignor, the receipt and sufficiency of which are hereby acknowledged by Assignor, Assignor does hereby assign, transfer, convey and deliver to Assignee, its successors and assigns, all items of tangible personal property owned by The Michael King Smith Foundation and situated upon and used exclusively in connection with the land described on the attached Exhibit A (the "Land") and the improvements located thereon (the "Improvements"), but specifically excluding (1) any and all personal property owned by tenants or otherwise considered the property of tenants under any leases affecting the Land or Improvements, (2) any personal property owned by other third parties situated upon the Land, and (3) Excluded Assets as defined in that certain Asset Purchase Agreement between Assignor and Assignee dated as of _____, 2016 (the "Personal Property"). A list of certain vehicles, planes, and equipment included in the Personal Property is attached hereto as Exhibit B, but such list does not include all items of Personal Property.

In addition, Assignor assigns to Assignee all of Assignor's rights, title, and interest in and to all permits, licenses, warranties, guaranties, plans, approvals, entitlements, development agreements, utility contracts, development rights, governmental contracts, water and mineral rights, certificates, prepaid fees, credits and other intangible rights and intangible property related to the Property, and all agreements, studies, reports, plans and other materials related to the Land and Improvements.

ASSIGNEE ACKNOWLEDGES AND AGREES THAT THE SALE OF THE PERSONAL PROPERTY AS PROVIDED FOR HEREIN IS MADE ON AN "AS IS, WHERE IS" CONDITION AND BASIS "WITH ALL FAULTS," EXCEPT AS SPECIFICALLY PROVIDED IN THE ASSET PURCHASE AGREEMENT BETWEEN THE PARTIES DATED AS OF _____, 2016.

This Bill of Sale may be signed in counterparts, and all counterparts so executed shall constitute one contract, binding on all parties hereto, even though all parties are not signatory to the same counterpart.

*(Remainder of Page Is Intentionally Left Blank;
Signature Page Follows)*

Dated this _____ day of _____, 201__.

By:_____
Kenneth S. Eiler, Chapter 11 Trustee of THE MICHAEL
KING SMITH FOUNDATION in United States Bankruptcy
Court for the District of Oregon Case No. 16-30233-
rld11

{00519045;11}

EXHIBIT C – Page 2

## EXHIBIT A TO BILL OF SALE

### Legal Description

**Parcel 1:**

A tract of land located in the Reuben Harris Donation Land Claim No. 80, and being in Section 23, Township 4 South, Range 4 West, Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

Commencing at a point on the South line of said Harris Donation Land claim, said point being a brass disk located at the Northwest corner of the J. White Donation Land Claim No. 81; thence, along the South line of said Harris Donation Land Claim, North 89°57'08" East a distance of 141.08 feet to the Southeast corner of the 344/1000 of a chain (22.70 feet) wide parcel of land described in Parcel 2 of that property conveyed to Evergreen Agricultural Enterprises, Inc., by deed recorded May 15, 2003, as Instrument No. 2003-11230, Deed Records of Yamhill County, Oregon; thence, along the Easterly line of said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 30.00 feet to its intersection with the Northerly right of way line of Three Mile Lane; thence, continuing along the Easterly line of said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 752.64 feet to the point of beginning; thence, continuing along said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 173.86 feet to a 5/8 inch iron rod located at the Northeast corner thereof, said point being also on the Southerly line of the 23.00 foot wide parcel of land described in Parcel 2 of said Instrument No. 2003-11230; thence, along the Southerly line of said 23.00 foot wide parcel, North 89°55'14" East a distance of 0.15 feet to the most Southerly Southeast corner thereof; thence, along the Easterly boundary of said 23.00 foot wide parcel, North 00°28'14" East a distance of 23.00 feet to a 5/8 inch iron rod; thence South 89°55'14" West a distance of 449.37 feet; thence South 00°21'50" West a distance of 197.77 feet to a point; thence North 89°48'13" East a distance of 448.86 feet to the point of beginning.

Bearings are based on a record of survey recorded July 11, 2011, in the Yamhill County Survey Records as Survey No. 12,766.

**Parcel 2:**

A tract of land located in the Reuben Harris Donation Land Claim No. 80 and being in Sections 23 and 24, Township 4 South, Range 4 West, Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

That property described in deed to Delford M. Smith, Trustee of the Michael King Smith Foundation UTA Dated November 15, 2006, and recorded November 14, 2013, as Instrument No. 2013-17385, Deed Records of Yamhill County, Oregon, more particularly described as follows:

Beginning at an iron pipe on the division line between the North and South Halves of said Donation Land Claim 20.441 chains North 88°47' West of an iron pipe at the Southeast corner of the North half of said Donation Land Claim; running thence North 27.918 chains to an iron pipe set on the South margin of a 40 foot road now there; thence North 89°49' West along the South line of said roadway 30.797 chains to an iron pipe; thence South 14.534 chains to an iron pipe; thence North 89°49' West 9.195 chains to an iron pipe; thence South 12.66 chains to an iron pipe; thence South 88°47' East 39.975 chains to the place of beginning.

TOGETHER WITH the following described tract of land:

{00519045;11}

Commencing at an iron pipe located at the Southeast corner of said property described in Instrument No. 2013-17385; thence, along the South line of said property described in Instrument No. 2013-17385, North 89°03'00" West a distance of 784.47 feet to the Northeast corner of that property conveyed to The Michael King Smith Foundation by deed recorded February 29, 2012, as Instrument No. 2012-02476, Deed Records of Yamhill County, Oregon, and the point of beginning; thence, along the Easterly line of said property described in Instrument No. 2012-02476, South 00°27'50" West a distance of 1447.92 feet to the most Easterly Southeast corner thereof, said point being on the North line of Parcel No. 5 of that property conveyed to H & R Burch Limited Partnership by deed recorded December 13, 1993, in Film Volume 299, Page 1369, Deed Records of Yamhill County, Oregon; thence, along the North line of said H & R Burch Limited Partnership Property, South 89°57'08" West a distance of 295.52 feet to the Northwest corner thereof; thence, along the West line of said H & R Burch Limited Partnership property, South 02°27'08" West a distance of 369.30 feet to a point on the Northerly right of way line of Three Mile Lane (30.00 feet Northerly of the South line of said Harris Donation Land Claim, when measured at right angles); thence, along said Northerly right of way line, South 89°57'08" West a distance of 1301.20 feet to a 5/8 inch iron rod located at the most Southerly Southeast corner of that property conveyed to Evergreen Vintage Aircraft, Inc., by deed recorded February 29, 2012, as Instrument No. 2012-02475, Deed Records of Yamhill County, Oregon; thence, along the most Southerly East line of said Evergreen Vintage Aircraft, Inc. property, North 00°20'28" East a distance of 609.97 feet to a point; thence, departing said most Southerly East line, North 90°00'00" East a distance of 1369.06 feet to a point; thence North 00°30'00" East a distance of 1212.36 feet to a point on the South line of said property described in Instrument No. 2013-17385; thence, along the South line of said property described in Instrument No. 2013-17385, South 89°03'00" East a distance of 228.12 feet to the point of beginning.

EXCEPTING THEREFROM any portion thereof appropriated by the State of Oregon, by and through its Department of Transportation, in Stipulated Final Judgment CV89-120, recorded February 26, 1991, in Film Volume 252, Page 725, Deed Records.

ALSO EXCEPTING THEREFROM that portion conveyed to the City of McMinnville, a Municipal Corporation, by Dedication of Easement and Right of Way recorded in Instrument No. 2003-04463, Deed Records.

Bearings are based on a record of survey recorded July 11, 2011, in the Yamhill County Survey Records as Survey No. 12, 766.

TOGETHER WITH an easement for a roadway thirty feet in width over and across the following described real

premises:

Being a part of the Reuben Harris Donation Land Claim, Notification No. 1232, Claim No. 80 in Township 4 South, Range 4 West of the Willamette Meridian in Yamhill County, Oregon, and beginning at an iron pipe at the Southeast corner of the David M. Jesse Donation Land Claim at an angle in County Road and angle in Harris Claim; thence North 89° 49' West along line between the Jesse and Harris Claims and the North side of present 40 foot roadway now there 33.96 chains to the Southeast corner of that certain tract conveyed to Clair L. Fisher and Alta L. Fisher by deed recorded in Book 114 at Page 580, Deed Records; thence Southerly .606 chains to the most Northerly Northwest corner of that certain tract conveyed to Viljo W. Pekkola, Eric E. Pekkola and Larry E. Pekkola recorded in Book 124 at Page 463, Deed Records; thence South 89° 49' East along the most Northerly North line of said Pekkola tract and the Easterly extension thereof 33.96 chains to a point in the County Road now there; thence North .606 chains to the point of beginning.

EXCEPTING THEREFROM the North ten (10) feet of even width.

## Parcel 3:

A tract of land located in the Reuben Harris Donation Land Claim No. 80 and the V. Snelling Donation Land Claim No. 52 and being in Sections 22 and 23, Township 4 South, Range 4 West of the Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

Commencing at a point on the South line of said Harris Donation Land Claim, said point being a brass disk located at the Northwest corner of the J. White Donation Land Claim No. 81; thence along the South line of said Harris Donation Land Claim North 89°57'08" East a distance of 118.38 feet to the Southwest corner of the 344/1000 of a chain (22.70 feet) wide parcel of land described in Parcel 2 of that property conveyed to Evergreen Agricultural Enterprises, Inc., by Deed recorded May 15, 2003 as Document No. 2003-11230, Deed Records of Yamhill County, Oregon; thence along the Westerly line of said 344/100 of a chain wide parcel, North 00°28'14" East a distance of 30.00 feet to its intersection with the Northerly right of way line of Three Mile Lane and the point of beginning; thence, along said Northerly right of way line, North 89°57'08" East a distance of 926.63 feet to a 5/8 inch iron rod located at the most Southerly Southwest corner of that property conveyed to Evergreen Vintage Aircraft, Inc., by deed recorded February 29, 2012, as Instrument No. 2012-02475, Deed Records of Yamhill county, Oregon; thence, along the Westerly boundary of said Evergreen Vintage Aircraft, Inc. property, North 00°19'30" East a distance of 754.96 feet to a point; thence, departing said Westerly boundary, South 89°48'13" West a distance of 1350.90 feet to a point; thence North 00°21'50" East a distance of 1126.51 feet to a 5/8 inch iron rod located at a point on the division line between the North and South halves of said Harris Donation Land Claim; thence, along said division line, South 89°03'00" East a distance of 1264.57 feet to a point; thence, departing said division line, South 00°21'50" West a distance of 202.01 feet to a point; thence South 89°06'02" East a distance of 130.69 feet to a point; thence North 00°24'52" East a distance of 201.89 feet to a point on said division line; thence, along said division line, North 89°03'00" West a distance of 6.65 feet to a 5/8 inch iron rod located at the most Easterly corner of that property conveyed to Delford M. Smith, Trustee of the Michael King Smith Foundation UTA Dated November 15, 2006, by deed recorded November 14, 2013, as Instrument No. 2013-17383, Deed Records of Yamhill County, Oregon; thence, along the Northeast line of said property described in Instrument No. 2013-17383, North 50°51'00" West a distance of 1130.00 feet to a 5/8 inch iron rod; thence, continuing along said Northeast line, South 50°51'00" West a distance of 223 feet, more or less, to the center of the Yamhill River; thence, running upstream in a Westerly direction along the center of the Yamhill River, to its intersection with said division line between the North and South halves of said Harris Donation Land Claim and the most Westerly corner of said property described in Instrument No. 2013-17383, said point being also on the North line of that property described as Parcel 1 of "Tax Lot 1300 aka Parcel 2" in Deed to Evergreen Vintage Aircraft, Inc., recorded November 27, 2002, as Instrument No. 2002-23658, Deed Records of Yamhill County, Oregon; thence North 89°03'00" West, along the North line of said property described in Instrument No. 2002-23658, to the most Northerly Northwest corner thereof, said point being on the Northwest line of said Reuben Harris Donation Land Claim; thence South 51°59'54" West, along the Northwest line of said Reuben Harris Donation Land Claim, to the most Westerly Northwest corner of said property described in Instrument No. 2002-23658; thence, in a Southeasterly direction, following the courses of the Southwesterly boundary of said property described in Instrument No. 2002-23658, to a stone located at the Southwest corner thereof; thence, among the South line of said property described in Instrument No. 2002-23658, North 89 ° 55'14" East a distance of 260.40 feet, more or less, to the Northwest corner of that property conveyed to Delford M. Smith, Trustee of the Michael King Smith Foundation UTA Dated November 15, 2006 by deed recorded November 14, 2013, as Instrument No. 2013-17384, Deed Records of Yamhill County, Oregon; thence, along the Westerly boundary of said property described in Instrument No. 2013-17384, South 00°06'12" East a distance of 226.14 feet, more or less, to an angle point thereon; thence, continuing along said Westerly boundary, South 64°52'07" East a distance of 365.15 feet to an angle point thereon; thence, continuing along said Westerly boundary, South 00°06'12" East a distance of 63.19 feet to a point on the Northerly boundary of that property awarded to the State of Oregon, by and through its Department of Transportation (ODOT), as set forth in Stipulated General Judgment, Case No. CV 020279 in the Circuit Court for the County of Yamhill, State of Oregon, entered June 14, 2004 and recorded June 24, 2004, as Instrument No. 2004-12481, Deed Records of Yamhill County, Oregon; thence, along the Northerly boundary of said ODOT property, South 84°00'53" East a distance of 7.33 feet, more or less, to an angle point

thereon; thence, continuing along the Northerly boundary of said ODOT property, North 84°32'55" East a distance of 111.98 feet to an angle point thereon; thence, continuing along the Northerly boundary of said ODOT property, South 87°30'08" East a distance of 254.87 feet to an angle point thereon; thence, continuing along the Northerly boundary of said ODOT property, South 50°55'50" East a distance of 471.43 feet to an angle point thereon; thence, continuing along the Northerly boundary of said ODOT property, South 62°21'11" East a distance of 137.16 feet to the Westerly line of said 344/100 of a chain wide parcel of land; thence, along the Westerly line of said 344/1000 of a chain parcel of land, South 00°28'14" West a distance of 118.39 feet, more or less, to the point of beginning.

EXCEPTING THEREFROM any portion thereof appropriated by the State of Oregon, by and through its Department of Transportation, in Stipulated Final Judgment CV89-120, recorded February 26, 1991, in Film Volume 252, Page 725, Deed Records.

ALSO EXCEPTING THEREFROM that portion conveyed to the City of McMinnville, a Municipal Corporation by Dedication of Easement and Right of Way recorded in Instrument No. 2003-04463, Deed Records.

ALSO EXCEPTING THEREFROM that portion conveyed to the City of McMinnville, a Municipal Corporation by Dedication of Easement and Right of Way recorded in Instrument No. 2003-04464, Deed Records.

Bearings are based on a record of survey recorded July 11, 2011, in the Yamhill County Survey records, as Survey No. 12,766.

### Parcel 4:

A tract of land located in the Reuben Harris Donation Land Claim No. 80, and being in Section 23, Township 4 South, Range 4 West, Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

Commencing at a point on the South line of said Harris Donation Land Claim,, said point being a brass disk located at the Northwest corner of the J. White Donation Land Claim No. 81; thence, along the South line of said Harris Donation Land Claim, North 89°57'08" East a distance of 1583.84 feet to its intersection with the Southerly extension of the most Southerly East line of that property conveyed to Evergreen Vintage Aircraft, Inc., by deed recorded February 29, 2012, as Instrument No. 2012-02475, Deed Records of Yamhill County, Oregon; thence, along the Southerly extension of said Evergreen Vintage Aircraft, Inc. property, North 00°20'28" East a distance of 30.00 feet to a 5/8 inch iron rod located at the most Southerly Southeast corner thereof; thence, along the most Southerly East line of said Evergreen Vintage Aircraft, Inc., property, North 00°20'28" East a distance of 609.97 feet to the point of beginning; thence, continuing along said most Southerly East line, North 00°20'28" East a distance of 299.76 feet to an angle point on the Easterly boundary of said Evergreen Aviation, Inc., property; thence, along said Easterly boundary, North 89°58'18" East a distance of 370.00 feet to an angle point thereon; thence, continuing along the Easterly boundary of said Evergreen Aviation, Inc. property, North 00°20'28" East a distance of 491.48 feet to a 5/8 inch iron rod located at the Northeast corner thereof; thence, along the North line of said Evergreen Aviation, Inc. property, South 89°50'51" West a distance of 1145.00 feet to a 5/8 inch iron rod located at the Northwest corner thereof; thence, along the most Westerly line of said Evergreen Aviation, Inc property, South 00°22'58" West a distance of 132.01 feet to a 5/8 inch iron rod located at the most Northerly Northeast corner of that property conveyed to The Michael King Smith Foundation by deed recorded July 23, 2012, as Instrument No. 2012-10261, Deed Records of Yamhill County, Oregon; thence, along the North line of said The Michael King Smith Foundation property, South 89°54'25" West a distance of 430.74 feet to a 5/8 inch iron rod located at the most Northerly Northwest corner thereof; thence, along the most Northerly West line of said The Michael King Smith Foundation property, South 00°05'35" East a distance of 317.02 feet to a 5/8 inch iron rod located at an angle point on the Westerly boundary thereof; thence, along the most Westerly North line of said The Michael King Smith Foundation Property, together with the Westerly extension thereof, South 89°55'14" West a distance of 686.36 feet to a point; thence North 00°21'50" East a distance of 928.73 feet to a 5/8 inch iron rod located at a point on the division line between the North and South halves of said Harris Donation Land Claim; thence, along said division line, South 89°03'00" East a distance of 1664.57 feet to a point; thence, departing said division line, South 00°21'50" West a distance of 202.01 feet to a point; thence South 89°06'02" East a distance of 130.69 feet to a point; thence North 00°24'52" East a distance of 201.89 feet to a point on said division line; thence, along said division line, South 89°03'00" East a distance of 1866.50 feet to a point; thence, departing said division line, South 00°30'00" West a distance of 1212.36 feet to a point; thence South 90°00'00" West a distance of 1369.06 feet to the point of beginning.

Parcel 5:

A tract of land located in the Reuben Harris Donation Land Claim No. 80 and being in Section 23, Township 4 South, Range 4 West, Willamette Meridian, Yamhill County, Oregon, more particularly described as follows:

Commencing at a point on the South line of said Harris Donation Land Claim,, said point being a brass disk located at the Northwest corner of the J. White Donation Land Claim No. 81; thence, along the South line of said Harris Donation Land Claim, North 89°57'08" East a distance of 141.08 feet to the Southeast corner of the 344/1000 of a chain (22.70 feet ) wide parcel of land described in Parcel 2 of that property conveyed to Evergreen Agricultural Enterprises, Inc. by deed recorded May 15, 2003, as Instrument No. 2003-11230, Deed Records of Yamhill County, Oregon; thence, along the Easterly line of said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 30.00 feet to its intersection with the Northerly right of way line of Three Mile Lane; thence, continuing along the Easterly line of said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 752.64 feet to the point of beginning; thence, continuing along the Easterly line of said 344/1000 of a chain wide parcel, North 00°28'14" East a distance of 173.86 feet to a 5/8 inch iron rod located at the Northeast corner thereof, said point being also on the Southerly line of the 23.00 foot wide parcel of land described in Parcel 2 of said Instrument No. 2003-11230; thence, along the Southerly line of said 23.00 foot wide parcel, North 89°55'14" East a distance of 0.15 feet to the most Southerly Southeast corner thereof; thence, along the Easterly boundary of said 23.00 foot wide parcel, North 00°28'14" East a distance of 23.00 feet to a 5/8 inch iron rod; thence, departing said Easterly boundary, North 89°55'14" East a distance of 236.99 feet to a 5/8 inch iron rod; thence North 00°05'35" West a distance of 317.02 feet to a 5/8 inch iron rod; thence North 89°54'25" East a distance of 430.74 feet to a 5/8 inch iron rod located on the Westerly boundary of that property conveyed to Evergreen Vintage Aircraft, inc. by deed recorded February 29, 2012, as Instrument No. 2012-02475, Deed Records of Yamhill County, Oregon; thence, along the Westerly boundary of said Evergreen Vintage Aircraft, Inc. property, South 00°22'58" West a distance of 357.23 feet to a 5/8 inch iron rod located at an angle point thereon; thence, continuing along said Westerly boundary, North 89°54'46" East a distance of 236.33 feet to a 5/8 inch iron rod located at an angle point thereon; thence, continuing along said Westerly boundary, South 00°19'30" West a distance of 154.95 feet; thence, departing said Westerly boundary, South 89°48'13" West a distance of 902.04 feet to the point of beginning.

Bearings are based on a record of survey recorded July 11, 2011 in the Yamhill County Survey Records as Survey No. 12,766.

EXHIBIT B TO BILL OF SALE

List of Vehicles, Planes and Equipment

[TO BE INSERTED]

{00519045;11}

EXHIBIT C – Page 8

## CERTIFICATE OF SERVICE

I hereby certify that I served copies of the foregoing **NOTICE OF FILING OF ASSET PURCHASE AGREEMENT BETWEEN TRUSTEE AND THE FALLS EVENT CENTER LLC** on all ECF participants through the Court's Case Management/Electronic Case File system, and on the following parties by mailing a full, true and correct copy in a sealed first-class postage prepaid envelope, addressed to the parties listed below, and deposited with the United States Postal Service at Portland, Oregon on the date set forth below:

Henderson Bennington Moshofsky P.C.
4800 SW Griffith Dr #350
Beaverton, OR 97005


DATED June 22, 2016

            /s/ Stuart Wylen
Stuart Wylen, Paralegal and Legal Assistant


**Page 1 - CERTIFICATE OF SERVICE**

BALL JANIK LLP
One Main Place
101 Southwest Main Street, Suite 1100
Portland, Oregon 97204-3219
Telephone 503-228-2525

1067452\v1

Case 16-30233-rld11   Doc 97   Filed 06/22/16